PEOPLE v SWINT

Docket Nos. 191572, 192493. Submitted April 3, 1997, at Detroit. Decided September 12, 1997, at 9:10 A.M.

Anthony E. Swint was convicted by a jury in the Eaton Circuit Court, Thomas S. Eveland, J., of being a felon in possession of a firearm and was found guilty by the court of probation violation and of being a fourth-felony habitual offender after he handled a rifle while on probation for felonious assault. The defendant appealed the two convictions separately. The appeals were consolidated.

The Court of Appeals *held*:

1. MCL 750.224f; MSA 28.421(6), which bars persons convicted of certain felonies from possessing, using, transporting, selling, purchasing, carrying, receiving, or distributing firearms until the expiration of certain periods following completion of sentences, does not violate Const 1963, art 1, § 6, which states, "Every person has a right to keep and bear arms for the defense of himself and the state." The statute does not infringe on the defendant's constitutional right to keep and bear arms for his and the state's defense inasmuch as the statutory prohibition is on firearms only, leaving other weapons that are not firearms available for asserting the constitutional right to bear arms for defense.

2. The right under Const 1963, art 1, § 6 to keep and bear arms for defense of self and state is not absolute and is subject to reasonable regulation by the state in the exercise of its police power to protect the health, safety, and welfare of its citizens. Even if it is assumed that the statute at issue in this case infringes on the right to keep and bear arms under the state constitution, the statute represents a reasonable regulation by the state. The state has a legitimate police-power interest in limiting the possession of firearms by persons who, by their past commission of certain specified felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity.

3. The application of MCL 750.224f; MSA 28.421(6) to a person who, like the defendant, was convicted of the predicate felony before the statute became effective does not violate US Const, art I, § 20 and Const 1963, art 1, § 10, the Ex Post Facto Clauses of the federal and state constitutions. The statute, in punishing the pos-

session of a firearm by a felon, does not impose additional punishment for the predicate felony.

4. The defendant failed to preserve for appeal the claim that the trial court erred in not instructing the jury about the meaning of "possession" because he failed to object to the instructions that were given. Manifest injustice will not result from the refusal of the Court of Appeals to review the claim because even if there were instructional error, it was harmless in light of the defendant's testimony that he held the rifle and that, as sheriff's deputies approached his house, he threw the rifle out of the house through a back door.

5. The trial court abused its discretion in permitting the jury to be informed that the defendant had previously been convicted of "assault with a dangerous weapon" despite the defendant's stipulation that the jury could be told that he had previously been convicted of "felonious assault," in view of the potential prejudice to the defendant from the jury generalizing the defendant's earlier bad act as reflective of his propensity to commit the charged offense of being a felon in possession of a firearm. However, the trial court's error was harmless in light of the overwhelming evidence presented at trial.

Affirmed.

1. CRIMINAL LAW — FELONS IN POSSESSION OF FIREARMS — CONSTITUTIONAL LAW — RIGHT TO KEEP AND BEAR ARMS.

The statute that makes it a felony for certain convicted felons to possess, use, transport, sell, purchase, carry, receive, or distribute firearms within certain years after the completion of their sentences does not violate the right under the state constitution to keep and bear arms for the defense of oneself or the state (Const 1963, art 1, § 6; MCL 750.224f; MSA 28.421[6]).

2. CONSTITUTIONAL LAW — RIGHT TO KEEP AND BEAR ARMS — POLICE-POWER REGULATIONS — FELONS IN POSSESSION OF FIREARMS.

The right under the state constitution to keep and bear arms for the defense of oneself or the state is not absolute and is subject to reasonable regulation by the state in the exercise of its police power to protect the health, safety, and welfare of its citizens; the statute that makes it a felony for certain convicted felons to possess firearms represents a reasonable exercise by the state of its police power (Const 1963, art 1, § 6; MCL 750.224f; MSA 28.421[6]).

3. CRIMINAL LAW — FELONS IN POSSESSION OF FIREARMS — EVIDENCE — UNDERLYING FELONIES.

The name and nature of the prior felony underlying a prosecution for the offense of felon in possession of a firearm may not be intro-

duced into evidence in a jury trial if the defendant stipulates that the defendant has been convicted of a felony and is ineligible to possess a firearm (MCL 750.224f; MSA 28.421[6]; MRE 403; FRE 403).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jeffrey L. Sauter*, Prosecuting Attorney, and *William M. Worden*, Senior Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald E. Steinberg*), for the defendant on appeal.

Before: MARKEY, P.J., and BANDSTRA and HOEKSTRA, JJ.

MARKEY, P.J. Following a jury trial, defendant was convicted on November 14, 1995, of being a felon in possession of a firearm, MCL 750.224f; MSA 28.421(6). On November 29, 1995, the trial court held a hearing and determined that defendant was guilty of a probation violation based on defendant's failure to report to his probation officer. At a subsequent sentencing hearing, the trial court found that defendant was a fourth-offense habitual offender and sentenced him to three to ten years' imprisonment for the felon in possession/habitual offender conviction. The court also sentenced defendant to a concurrent term of thirty-two to forty-eight months' imprisonment for the probation violation. In Docket No. 192493, defendant appeals as of right the conviction of felon in possession of a firearm. In Docket No. 191572, defendant appeals as of right the conviction of probation violation. We affirm.

I

On May 20, 1995, while on probation for felonious assault, defendant allegedly handled a rifle while at his home and in the presence of his infant daughter, Elizabeth, and the infant's mother, Denise Simpson. Simpson testified at trial that she and defendant argued that day, that he was suicidal, that he had a rifle in his hands, which he would cradle in his arms, and that "he'd hold it up to his head and wanted to kill himself. He said he'd kill himself if I left." Defendant would not permit Simpson to leave with the child, so Simpson left alone and contacted her mother. Both Simpson and her mother returned to defendant's house. Simpson's mother also testified that defendant threatened to shoot her unless she left his property and would shoot any police officers who came to the house. Both Simpson and her mother left again without the child.

Because she feared for the safety of both her child and defendant, Simpson then contacted the sheriff's department, whose deputies interviewed both women and confirmed defendant's criminal record. The sheriff's deputies surrounded defendant's house, announced their presence to defendant, and instructed him to come out the front door of the house with his hands in the air. Testimony revealed that when defendant did not respond, the sheriff's deputies used sirens to wake defendant, in case he was sleeping. Deputy James West, who had been positioned behind defendant's house, testified that he saw not only the back door of the residence open but also defendant tossing a long-barreled gun into the back yard. "[A] long gun came out the back door and then [defendant] came out the back of the residence, out

the back door." Deputy West radioed the other depu-
ties that "[h]e's coming out, he's got a gun." Deputy
West and another deputy arrested defendant as he
apparently attempted to "[go] for the gun." The gun, a
.22 caliber rifle, was found stuck in the ground.

Defendant testified at trial. He denied threatening
Simpson but admitted that he begged her not to leave
and threatened that if he had to live alone, he would
kill himself. He also denied ever holding the rifle in
his hands or cradling it in his arms. Defendant also
admitted that the rifle was in the kitchen, in plain
view, leaning against a wall. He did not know how
long the gun had been there because the house was
damaged by fire, and he had not lived there for sev-
eral days. Defendant testified that the woman with
whom he previously lived had two sons who came to
defendant's house to hunt and to shoot guns, and the
rifle at issue belonged to one of them. Luke Cassel,
one of the boys defendant referred to, identified the
rifle as one that his father had given him for Christ-
mas. He stated that he had taken the rifle to defend-
ant's house in May 1995 to hunt birds, that he had left
the gun in defendant's house without defendant's per-
mission, and that he had forgotten about it. Defend-
ant also denied threatening to shoot Simpson's
mother or the police if they came to the house but
admitted telling her that he would "rather shoot her
than look at her."

Defendant further testified that when he was awak-
ened by sirens outside his house and realized that the
police were outside, he picked up the gun because he
knew that, as a convicted felon, he was not supposed
to be around a gun. So, he grabbed the gun and threw

it out the back door as far as he could. He denied that he intended to jump out and grab the gun.

II

For the first time in Michigan, we have been asked to determine whether MCL 750.224f; MSA 28.421(6)[1] violates Const 1963, art 1, § 6, which states, "Every

_____

[1] MCL 750.224f; MSA 28.421(6) provides:

(1) Except as provided in subsection (2), a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after all of the following circumstances exist:

(a) The person has paid all fines imposed for the violation.

(b) The person has served all terms of imprisonment imposed for the violation

(c) The person has successfully completed all conditions of probation or parole imposed for the violation.

(2) A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until all of the following circumstances exist:

(a) The expiration of 5 years after all of the following circumstances exist:

(i) The person has paid all fines imposed for the violation.

(ii) The person has served all terms of imprisonment imposed for the violation.

(iii) The person has successfully completed all conditions of probation or parole imposed for the violation.

(b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored pursuant to section 4 of act No. 372 of the Public Acts of 1927, being section 28.424 of the Michigan Compiled Laws.

(3) A person who possesses, uses, transports, sells, purchases, carries, ships, receives, or distributes a firearm in violation of this section is guilty of a felony, punishable by imprisonment for not more than 5 years, or a fine of not more than $5,000.00, or both.

(4) This section does not apply to a conviction that has been expunged or set aside, or for which the person has been pardoned, unless the expunction, order, or pardon expressly provides that the person shall not possess a firearm.

(5) As used in this section, "felony" means a violation of the law of this state, or of another state, or of the United States that is punishable by imprisonment for 4 years or more, or an attempt to violate such a law.

person has a right to keep and bear arms for the defense of himself and the state."[2] We find that it does not.

A

Unfortunately, federal cases interpreting the Second Amendment of the United States Constitution provide no guidance to us because the text of the Second Amendment, which states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed," differs significantly from the text of art 1, § 6. *Benjamin v Bailey*, 234 Conn 455, 467; 662 A2d 1226 (1995). Moreover, the Second Amendment is

---

(6) As used in subsection (2), "specified felony" means a felony in which 1 or more of the following circumstances exists:

(i) An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

(ii) An element of that felony is the unlawful manufacture, possession, importation, exportation, distribution, or dispensing of a controlled substance.

(iii) An element of that felony is the unlawful possession or distribution of a firearm.

(iv) An element of that felony is the unlawful use of an explosive.

(v) The felony is burglary of an occupied dwelling, or breaking and entering an occupied dwelling, or arson.

[2] Notably, the preceding Michigan Constitution of 1908 provided in art 2, § 5: "Every person has a right to bear arms for the defense of himself and the state." The Convention Comment to Const 1963, art 1, § 6, provided, "[n]o change from Sec. 5, Article II, of the present [1908] constitution, except for the insertion of the words 'keep and' which brings the section into conformity with a similar provision in the U.S. Constitution; thus, the right to 'keep' as well as 'bear' arms is recognized." Hence, the Constitutional Convention that proposed the current Michigan Constitution did not intend to reduce the protection of the right to bear arms granted by Const 1908, art 2, § 5.

not applicable to the states through the Fourteenth Amendment. *Miller v Texas*, 153 US 535, 538; 14 S Ct 874; 38 L Ed 812 (1894). Several states, including Connecticut (art I, § 15), Alabama (art I, § 26), Indiana (art I, § 32), Ohio (art I, § 4), Oregon (art I, § 27), and Wyoming (art 1, § 24), have constitutional right-to-bear-arms provisions virtually indistinguishable from the language in Const 1963, art 1, § 6. Other states, including New Hampshire (part I, art 2-a) and North Dakota (art I, § 1), define the list of protected uses of firearms more expansively than Michigan by authorizing the right to keep and bear arms for purposes including "defense of self, family, home and others, lawful common defense, hunting, and recreational use." While some states chose to mirror the language of the Second Amendment, e.g., North Carolina (art I, § 30), still others make explicit statements in their constitutions that the right to keep and bear arms is subject to state regulation, i.e., Louisiana Constitution, art I, § 11 ("this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person"); Colorado Constitution, art II, § 13 (similar to Louisiana).

In determining whether a Connecticut statute banning assault rifles violated that state's constitutional right to bear arms, the Connecticut Supreme Court set forth a two-tiered method of inquiry that we find compelling in analyzing the issue presented on appeal.[3] *Benjamin, supra* at 463. First, before we

---

[3] Notably, the Connecticut Supreme Court in *Benjamin, supra* at 464, n 6, explicitly stated that "we reserve the question whether a statute such as General Statutes § 53a-217, which criminalizes the possession of any firearm by a convicted felon, infringes on a constitutional interest protected by article first, § 15." It then referred the reader to compare the cases of *People v Blue*, 190 Colo 95, 103; 544 P2d 385 (1975), with *State v*

determine what level of scrutiny to apply where a statute is challenged as unconstitutional, we must determine whether the case at bar involves an infringement on a constitutionally protected interest. *Id.* "To do so, we must define the boundaries of the right invoked. Only if we were to conclude that the statute infringes on an interest in bearing arms that is protected by the state constitution would we have to decide what level of justification the state must proffer to support such an infringement and whether the state has satisfied that burden in this case." *Id.*

The *Benjamin* court went on to review the specific language of the Connecticut Constitution, which provides that "every citizen has a right to bear arms in defense of himself and the state." *Id.*, citing Conn Const, art I, § 15. We find insightful the court's analysis of this language:

> The limiting language of the provision [i.e., "in defense of himself and the state"] may be understood to establish two related principles. *First, it demonstrates that the bearing of arms is not valued in and of itself, but only as a means to particular ends.* Second, it clearly indicates what purposes are *not* accorded explicit constitutional protection: the bearing of arms for any purpose other than defense of one's self or the state.
>
> In this connection, the textual link between the right to bear arms and its enunciated purpose itself suggests a limitation on the nature and scope of the constitutional right. The common law principle permitting one to use deadly force in self-defense has long been restricted by the general rule of reason. . . . Thus, the constitutional text embodies a rule of reason, rather than an absolute. [*Id.* at 464-465 (emphasis added).]

*Smith,* 132 NH 756, 758; 571 A2d 279 (1990), which we will do later in our analysis.

We agree with the *Benjamin* court's interpretation of the constitutional right to bear arms and we find it applicable to Const 1963, art 1, § 6. Indeed, defendant does not claim that he is being deprived of his right to defend himself or the state. He merely challenges the felon-in-possession statute because it denies him, for a limited time, the right to bear arms for any purpose, thereby valuing the bearing of arms in and of itself. Indeed, we agree that the bearing of arms for any purpose *other than* defense of self or state is not accorded explicit constitutional protection. Whether defendant can successfully allege a constitutional infringement on his right to defend himself with arms is an open question under *Benjamin* however.

We also note that while art 1, § 6 ensures a Michigan citizen's right to keep and bear "arms," that term is not defined. Black's Law Dictionary (6th ed), p 109, defines "arms" as "[a]nything that a man wears for his defense, or takes in his hands as a weapon." While MCL 750.224f; MSA 28.421(6) only precludes a former felon's use, possession, receipt, sale or transportation of a "firearm," it is silent regarding other "weapons." Arguably, MCL 750.224f; MSA 28.421(6) does not completely foreclose defendant's constitutional right to bear "arms," i.e., nonfirearm weapons, in defense of himself. As the *Benjamin* court observed in upholding the assault weapons ban in the face of a challenge involving the constitutional right to bear arms, "as long as our citizens have available to them *some types of weapons* that are adequate reasonably to vindicate the right to bear arms in self-defense, the state may proscribe the possession of other weapons without infringing on" the constitutional right to bear arms. *Benjamin, supra* at 465-466 (emphasis added).]

Accordingly, we find that the constitutional right to bear arms contained in Const 1963, art 1, § 6, does not guarantee defendant the right to possess a firearm after defendant is convicted of a felony.

B

Even assuming that the felon-in-possession statute infringes upon defendant's right to keep and bear arms under the Michigan Constitution, we find that MCL 750.224f; MSA 28.421(6) represents a reasonable regulation by the state in the exercise of its police power to protect the health, safety, and welfare of Michigan citizens.

This Court has found that "the constitutionally guaranteed right to bear arms is subject to a reasonable exercise of the police power." *Bay Co Concealed Weapons Licensing Bd v Gasta*, 96 Mich App 784, 788; 293 NW2d 707 (1980), citing *People v McFadden*, 31 Mich App 512; 188 NW2d 141 (1971). Finding that the state has a legitimate interest in limiting access to weapons particularly suited for criminal purposes, such as concealed weapons, the *McFadden* Court relied upon *People v Brown*, 253 Mich 537, 540-543; 235 NW 245 (1931), which affirmed a statute banning the use of certain weapons, including a blackjack, as "within the reasonable and constitutional exercise of the police power of the State to curb crime." May the state then, by extension, assert a legitimate interest in limiting *certain individuals' access to firearms* as a reasonable exercise of the police power? This is an issue of first impression in Michigan. Regardless, we are guided by several tenets of constitutional and statutory interpretation as we strive to answer this question.

We review constitutional questions de novo on appeal. *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997). When interpreting a constitutional provision, our primary duty is to ascertain the purpose and intent of the provision. We do so by determining the intent of the people who adopted the constitutional provision by reference to the state of the law or the custom previously existing rather than by reference to today's changed views. *Mahaffey v Attorney General*, 222 Mich App 325, 334-335; 564 NW2d 104 (1997). "Thus, a court should place itself in the position of the framers and ascertain what was meant at the time the provision was adopted." *Id.* at 335. Moreover, statutes are presumed constitutional and "[e]very reasonable presumption must be made in favor of constitutionality." *Id.* at 344. We therefore have a duty to construe a statute as constitutional unless, of course, unconstitutionality is clearly apparent. *Id.*

C

While we find no Michigan cases on point, we do find authority from other jurisdictions supporting a state's ability to exercise its police powers and place certain limitations on the right to keep and bear arms. These jurisdictions have upheld the constitutionality of their felon-in-possession statutes in the face of similar challenges grounded in the right to keep and bear arms.

For example, in *Carfield v State*, 649 P2d 865, 870-873 (Wy, 1982), the Wyoming Supreme Court denied the defendant's constitutional challenge to the state's

felon-in-possession statute.[4] Article 1, § 24 of the Wyoming Constitution provides in relevant part that "[t]he right of citizens to bear arms in defense of themselves and the state shall not be denied." The court also recognized that art 1, § 24 by its very terms limits the right to bear arms to the defense of self and state, and the defendant could not claim that his possession of a firearm as he broke into his ex-girlfriend's house was justified under either defense of self or state. *Carfield, supra* at 871. Relying on other state court decisions finding that the right to bear arms is subject to the legitimate exercise of the state's police powers, the *Carfield* court found that the felon-in-possession statute was a reasonable exercise of the police power in furtherance of the public health, safety, and welfare. *Id.* at 871-872.

In *State v Ricehill*, 415 NW2d 481, 483 (ND, 1987), the North Dakota Supreme Court held that the state's constitutional guarantee that the right "to keep and bear arms for the defense of their person, family, property, and the state, and for lawful hunting, recreational, and other lawful purposes, which shall not be infringed," did not conflict with § 62.1-02-01(1) of the state criminal code prohibiting felons from possessing or owning firearms for ten years after the end of their incarceration or probation.[5] The North Dakota Supreme Court reviewed several other state court

---

[4] Wy Stat 6-11-115(a) (1981 Cum Supp), provides:

> Any person who has previously pleaded guilty or been convicted of murder, voluntary manslaughter, assault to commit murder, aggravated assault, robbery, burglary or sexual assault in the first or second degree, or mayhem, unless pardoned, and who uses or has in his possession any firearm is guilty of a felony.

[5] ND Cent Code 62.1-02-01(1) provides:

opinions to support its decision that the statute was constitutional:

> Ricehill argues that the right to bear arms is absolute. He argues that the language of the provision states that the right to bear arms "shall not be infringed," and that this means that the Legislature may place no limits on the possession of arms. We disagree with such a broad reading of the provision. Instead, we believe our Constitution's protection of the right to keep and bear arms is not absolute; although it prevents the negation of the right to keep and bear arms, that right nevertheless remains subject to reasonable regulation under the State's police power. *As the Michigan Supreme Court stated in construing that State's right to bear arms, "regardless of the basis of the right to bear arms, the State, nevertheless, has the police power to reasonably regulate it."* People v Brown, 253 Mich 537, [540-543]; 235 NW 245, 246 (1931).

> In this case the Legislature prohibited the possession of firearms by persons who have previously committed serious crimes. *It is patently reasonable for the Legislature to conclude that it is protecting the public welfare by enacting legislation that keeps firearms out of the hands of people who have shown a disposition to harm others.* The Louisiana Supreme Court stated, in rejecting a State constitutional right-to-bear-arms challenge to its prohibition against possession of a firearm by a felon under a police-power rationale:

> "It is beyond question that the statute challenged in the instant case was passed in the interest of the public and as an exercise of the police power vested in the legislature. *Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious*

> A person who has been convicted anywhere for a felony involving violence or intimidation, as defined in chapters 12.1-16 through 12.1-25, is prohibited from owning a firearm or having one in possession or under control for a period of ten years from the date of conviction or release from incarceration or probation, whichever is later.

*felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity." State v Amos,* 343 So 2d 166, 168 (La, 1977).

Another State which has concluded that its constitutional provision protecting the right to bear arms is to be tempered by the State's police power is Colorado. In *People v Blue,* 190 Colo 95; 544 P2d 385 (1975), the defendants had been convicted of violating Colorado's law prohibiting the possession of a firearm by a person previously convicted of a felony. They challenged this conviction under Colorado's constitutional provision protecting the right to bear arms. That provision, which may appear to be more inclusive than that of North Dakota, states:

"Right to bear arms. The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons." *Blue,* 544 P2d at 390, quoting Art II, § 13, Colo Const.

The court rejected the defendants' argument that the right to bear arms was absolute and that the prohibition on firearm possession by a felon thus was unconstitutional. In so concluding, the court stated:

*"When rights come into conflict, one must of necessity yield. The conflicting rights involved here are the individual's right to bear arms and the state's right, indeed its duty under its inherent police power, to make reasonable regulations for the purpose of protecting the health, safety, and welfare for the people.*

"We do not read the Colorado Constitution as granting an absolute right to bear arms under all situations. It has limiting language dealing with defense of home, person, and property. . . . In our view, the statute here is a legitimate exercise of the police power.

" ' . . . To limit the possession of firearms by those who, by their past conduct, have demonstrated an unfitness to be entrusted with such dangerous instrumentalities, is clearly in the interest of the public health, safety, and welfare and

within the scope of the Legislature's police power.' *People v Trujillo*, 178 Colo 147; 497 P2d 1 [1978].

"To be sure, the state legislature cannot, in the name of the police power, enact laws which render nugatory our Bill of Rights and other constitutional protections. But we do not read this statute as an attempt to subvert the intent of Article II, Section 13. The statute simply limits the possession of guns and other weapons by persons who are likely to abuse such possession." [*Blue*], 544 P2d at 390-391. [Citations omitted.]

We agree with this analysis and thus the right to bear arms must be read in conjunction with the State's exercise of the police power. See also *State v Krantz*, 24 Wash 2d 350; 164 P2d 453 (1945); *Carfield v State*, 649 P2d 865 (Wyo, 1982), and the cases cited therein.

Therefore, we hold that Section 62.1-02-01(1) does not violate the right to keep and bear arms in Article I, Section 1, of the North Dakota Constitution. [*Ricehill, supra* at 483-484 (emphasis added).]

In *Blue, supra* at 98-99, the Colorado Supreme Court found that the state's felon-in-possession statute[6] was neither unconstitutionally vague nor overbroad and violative of art II, § 13 of the Colorado Constitution.[7] The court rejected the assertion that the felon-in-possession statute was a "blanket pro-

---

[6] Colo Rev Stat 40-12-108 (1963 Perm Supp) provides:

Possession of weapons by previous offenders. Any person previously convicted of burglary, arson, or a felony involving the use of force or violence or the use of a deadly weapon, or attempt or conspiracy to commit such offenses, under the laws of the United States of America, the state of Colorado, or another state, within the ten years next preceding or within ten years of his release from incarceration, whichever is greater, who shall possess, use, or carry upon his person a firearm or other weapon mentioned in sections 18-1-901(3)(h) or sections 18-12-101 to 18-12-106, commits a class 5 felony. A second or subsequent offense under this section is a class 4 felony.

[7] Article II, § 13 of the Colorado Constitution reads:

scription that cannot be reconciled with the literal constitutional language." Instead, it found that "not all constitutional rights are absolute." *Blue, supra* at 102-103. The court distinguished cases where it deemed unconstitutional a statute attempting to prohibit aliens from owning or possessing firearms (a violation of equal protection and property rights) and an ordinance forbidding the possession, use, or carrying of a firearm outside one's own home (a violation of the right to bear arms).[8] *Id.* at 104; see also *Chan v City of Troy,* 220 Mich App 376; 559 NW2d 374 (1996). Rather, the *Blue* court found that the felon-in-possession statute constituted a legitimate exercise of the state's police power. The court also believed that the constitution contained limiting language dealing with the defense of home, person, and property that are reflected in another section of the state criminal code restricting the right to bear arms in certain circumstances while permitting some individuals to carry a concealed weapon. *Blue, supra* at 104.

In *McGuire v State,* 537 SW2d 26, 28-29 (Tex Crim App, 1976), the Court of Criminal Appeals of Texas denied the defendant's challenge that his original conviction for the unlawful possession of a firearm by a felon in violation of Tex Penal Code Ann 46.05,

---

Right to bear arms. The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.

[8] This case, *Lakewood v Pillow,* 180 Colo 20; 501 P2d 744 (1972), involved a nonfelon defendant, "and the issue of whether like restrictions could not constitutionally be imposed on persons who had been convicted of felonies involving the use of force or violence or certain dangerous weapons was not there considered." *Blue, supra* at 103.

should be dismissed because the statute violated the defendant's rights to keep and bear arms in the lawful defense of himself or the state, pursuant to Art I, § 23, of the Texas Constitution. The *McGuire* court relied on the earlier ruling in *Webb v State*, 439 SW2d 342 (Tex Crim App, 1969), upholding the constitutionality of the prior felon-in-possession statute. In *Webb*, *id.* at 343, the court found that the right of the defendant to arm himself in self-defense, as secured by Art I, § 23 of the Texas Constitution, was in no way infringed by the state's felon-in-possession statute, Art 489c, Vernon's Ann Penal Code,[9] because appellant might have armed himself with any weapon not prohibited in the statute.

Further, in *State v Smith*, 132 NH 756, 757-758; 571 A2d 279 (1990), the New Hampshire Supreme Court found that the state's felon-in-possession statute, N H Rev Stat Ann 159:3 (1988 Supp), was constitutional and not in violation of part I, article 2-a of the New Hampshire Constitution, which states: "All persons have the right to keep and bear arms in defense of themselves, their families, their property and the state." N H Rev Stat Ann 159:3 (1988 Supp) provides in part:

> No person who has been convicted in this or any other state of a felony against the person or property of another,

---

[9] Article 489c provides, in part:

Section 1. It shall be unlawful for any person who has been convicted of burglary or robbery, or a felony involving an act of violence with a firearm under the laws of the United States or of the State of Texas, or of any other state, and who has served a term in the penitentiary for such conviction, to have in his possession away from the premises upon which he lives any pistol, revolver or any other firearm capable of being concealed upon the person.

> or who has been convicted of a felony under RSA 318-B
> [controlled substances legislation], shall own or have in his
> possession or under his control a pistol, revolver, or other
> firearm.

An earlier version of the statute permitted felons to have or own a firearm if the felon received a written permit to purchase it from the town selectman, mayor, or chief of police. This provision was altered in 1981 to foreclose the possibility of a convicted felon obtaining a firearm. At the same time, the state legislature proposed part I, article 2-a as a constitutional amendment. Thus, the *Smith* court opined that the "legislature could not reasonably have intended in 1981 to propose a constitutional amendment that would invalidate RSA 159:3, a statute that had been amended in the same year." *Smith, supra* at 758.

The court also noted that because the New Hampshire voters, not the Legislature, made part I, article 2-a an amendment of the state constitution, a "standard constitutional analysis" was in order. *Id.* at 758. "Assuming that the right to bear arms is no more absolute than the right of free speech, . . . a restriction such as that provided by RSA 159:3 (Supp 1988) may be sustained if it 'narrowly serve[s] a significant governmental interest . . .' ," quoting *State v Comley*, 130 NH 688, 691; 546 A2d 1066 (1988). *Smith, supra* at 758. The court went on to find that "[t]he governmental interest served by the statute, protection of human life and property, is patently significant," and that "[t]he statute narrowly serves this interest by prohibiting a category of persons likely to be dangerous [i.e., those committing felonies against the person or property of another or a felony under the controlled substances act] from possessing dangerous

weapons." *Id.* Notably, the court observed that although other felons, such as habitual offenders and perjurers, are excluded from the felon-in-possession statute, some felons falling within the statute's reach are not potentially dangerous. *Id.* "However, on the standard we apply here, the statute need not be perfectly tailored, simply narrowly tailored. We hold that RSA 159:3 (Supp 1988) narrowly serves a significant governmental interest in protecting the general public and is therefore constitutional." *Id.*

In *Amos, supra* at 167, the Louisiana Supreme Court reversed the trial court's finding that the state statute forbidding the possession of a firearm after being convicted of a felony violated the state constitutional guarantee contained in art I, § 11 (1974) that "the right of each citizen to bear arms shall not be abridged." At the outset, the *Amos* Court noted that "the right to keep and bear arms guaranteed by the second amendment to the federal constitution *is not carried over into the fourteenth amendment so as to be applicable to the states*. It operates as a limitation only upon the power of Congress and the national government." *Id.* at 168. (Emphasis added.) While the court agreed with the defendants' assertion that, having completed their terms of incarceration for their felony convictions, their full rights of citizenship have been restored, it disagreed with the defendants' further contention that any legislative act limiting their right to keep and bear arms is unconstitutional, *id.* at 168:

> The right to keep and bear arms, like other rights guaranteed by our state constitution, is not absolute. We have recognized that such rights may be regulated in order to protect the public health, safety, morals or general welfare so

long as that regulation is a reasonable one. *It is beyond
question that the statute challenged in the instant case was
passed in the interest of the public and as an exercise of
the police power vested in the legislature. Its purpose is to
limit the possession of firearms by persons who, by their
past commission of certain specified serious felonies, have
demonstrated a dangerous disregard for the law and pres-
ent a potential threat of further or future criminal
activity.*

To be sure, La RS 14:95.1 is addressed to persons who are
citizens of this state by virtue of having terminated state
and federal supervision following their convictions. La
Const art 1, § 20 (1974). *These persons have, nonetheless,
previously been convicted of serious criminal offenses; res-
toration of citizenship cannot erase this fact.* The verbatim
transcripts of the constitutional convention debates indicate
that neither La Const art 1, § 11 nor La Const art 1, § 20
were ever intended to preclude the type of legislation dis-
puted herein. *We are satisfied that it is reasonable for the
legislature in the interest of public welfare and safety to
regulate the possession of firearms for a limited period of
time by citizens who have committed certain specified
serious felonies.* Courts of other states having statutes and
constitutional provisions comparable to our own have simi-
larly concluded that such regulation is constitutionally per-
missible as a reasonable and legitimate exercise of police
power. *People v Blue*, [*supra*]; *State v Krantz*, 24 Wash 2d
350; 164 P2d 453 (1945); *Akron v Williams*, 113 Ohio App
293; 177 NE2d 802 (1960); 79 Am Jur 2d Weapons, § 24
(1975).[10] [*Amos, supra* at 168 (emphasis added; citations
omitted).]

---

[10] Justice Calogero, who dissented in *Amos, supra*, observed that the
Second Amendment of the United States Constitution, like the earlier art
1, § 8 of the 1921 Louisiana Constitution linked the right to carry a gun
with the right to support a militia. Thus, the 1974 constitution, which
makes no reference to the militia, grants citizens the right to keep and
bear arms. Because the defendants are citizens with full rights of citizen-
ship once state and federal supervision over them has ceased, the justice
believed that they are entitled to the same rights afforded all citizens. The
justice also distinguished several other cases upholding the constitutional-
ity of other felon-in-possession statutes because those states based their

Despite the slight variations in the various state constitutional provisions on the right to bear arms and statutory provisions on felons in possession, we are persuaded by the analyses set forth in these cases that MCL 750.224f; MSA 28.421(6) represents a reasonable exercise of the state's police power to protect the health, safety, and welfare of its citizens. *Brown, supra* at 541; *Gasta, supra; McFadden, supra.* Indeed, "the felon-in-possession statute, MCL 750.224f: MSA 28.421(6), is aimed at protecting the public from guns in the hands of convicted felons, whether those weapons are concealed or not." *People v Mayfield*, 221 Mich App 656, 662; 562 NW2d 272 (1997). The Legislature has made the determination that felons, who have exhibited their disregard for ordered society and pose a threat to public safety, and firearms are a lethal combination—at least for three to five years after a felon successfully completes his term of incarceration and probation and pays all requisite fines. Indeed, other states, such as North Dakota and Colorado, have found their felon-in-possession laws to be constitutional despite the fact that these statutes prohibit felons from owning or possessing firearms for at least ten years, or twice as long as the maximum five-year prohibition in Michigan. MCL 750.224f; MSA 28.421(6) has effectively achieved the legitimate legislative purpose of keeping guns out of the hands of those most likely to use them against the public. See *State ex rel Wayne Co*

---

citizens' rights to keep and bear arms on the need for a militia. Thus, Justice Calogero, recognizing the policy reasons behind the legislature's actions, was constrained by the "broad new language" of the 1974 constitution in finding the felon-in-possession statute was unconstitutional. *Id.* at 169-170.

*Prosecuting Attorney v Bernstein*, 57 Mich App 204, 208; 226 NW2d 56 (1974). Accordingly, we find that defendant's right to bear arms under Const 1963, art 1, § 6 is not absolute and is subject to the reasonable limitations set forth in MCL 750.224f; MSA 28.421(6) as part of the state's police power.

We therefore uphold the constitutionality of MCL 750.224f; MSA 28.421(6) as a reasonable exercise of the state's police power.

III

Defendant also challenges MCL 750.224f; MSA 28.421(6) as violating US Const, art I, § 10 and Const 1963, art 1, § 10, the Ex Post Facto Clauses of the state and federal constitutions because his felony offenses were committed before the felon-in-possession statute was enacted in 1992. We disagree. This Court recently held that application of MCL 750.224f; MSA 28.421(6) to a defendant based upon his possession of a firearm after the effective date of the statute where he was convicted of the predicate felony before the statute's effective date did not violate the Ex Post Facto Clauses of the Michigan and United States Constitutions. See *People v Tice*, 220 Mich App 47, 51-52; 558 NW2d 245 (1996):

> In this case, the statute MCL 750.224f; MSA 28.421(6) is obviously punitive in that it imposes criminal penalties for its violation. This does not, however, establish that the statute impermissibly punished defendant for acts that preceded the date the statute took effect. To the contrary, *the conduct being punished in this case was defendant's possession of a firearm at a time after the enactment of the statute*. While tied to defendant's status as a convicted felon, the punishment was not imposed for the prior crime, but for his recent act of possessing a firearm. Furthermore,

*the state's predominant interest in enacting MCL 750.224f; MSA 28.421(6) was not the infliction of further punishment on those who had been convicted of previous felonies. Instead, the primary purpose of the statute was to protect the public by precluding certain convicted felons from possessing firearms. Because the protection of public safety is a valid exercise of the police power, Taylor [v Secretary of State,* 216 Mich App 333; 548 NW2d 710 (1996)], we find that application of MCL 750.224f; MSA 28.421(6) to a person who is a convicted felon as a result of a conviction of a felony committed before the date that statute took effect does not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions. [*Emphasis added.*]

IV

Defendant also argues that the trial court erred in failing to provide the jury with a definition of the term "possession" in its instructions regarding the felon-in-possession statute and despite the jurors' questions during deliberations regarding the meaning they should give to the term. Defense counsel failed, however, to object to the court's instructions either before the start of jury deliberations or after the court responded to the jurors' inquiries. Failure to object to jury instructions waives error unless relief is necessary to avoid manifest injustice, *People v Turner,* 213 Mich App 558, 573; 540 NW2d 728 (1995), and we find no manifest injustice here. Moreover, any error was harmless beyond a reasonable doubt in light of defendant's testimony at trial that he held the firearm on the night of the incident and threw it out the door when the sheriff's deputies arrived at his house. MCL 769.26; MSA 28.1096; see *People v Figgures,* 451 Mich 390, 402; 547 NW2d 673 (1996) (unpreserved, nonconstitutional error).

V

Finally, defendant argues that the trial court violated his right to a fair trial because the court denied his motion to exclude evidence of his prior felony conviction of assault with a dangerous weapon in exchange for a stipulation and plea that defendant had been convicted of felonious assault and was ineligible to possess a firearm. We agree and find that the trial court abused its discretion by denying the motion. *Old Chief v United States*, 519 US___; 117 S Ct 644; 136 L Ed 2d 574 (1997).

In *Mayfield, supra* at 661, we recently addressed a defendant's challenge to the manner in which the prosecution introduced evidence of his prior felony conviction in a felon-in-possession case. In that case, the defendant offered no type of stipulation to the trial court and was precluded on appeal from contending that the admission of evidence beyond the mere fact of his conviction constituted error, so we found no manifest injustice. *Id.* As an aside, however, we stated that "had defendant offered to concede the fact of the prior conviction, admission of evidence beyond such a stipulation may have constituted prejudicial error. See *Old Chief v United States*, 519 US ___; 117 S Ct 644; 136 L Ed 2d 574 (1997)." *Mayfield, supra* at 661.

In *Old Chief*, 136 L Ed 2d 584, the defendant requested that the trial court enter an order requiring the prosecution to refrain from mentioning the name and nature of his underlying felony "*except* to state that the Defendant has been convicted of a crime punishable by imprisonment exceeding one (1) year" in his prosecution for being a felon in possession of a

firearm.[11] The trial court rejected his offer to stipulate and permitted the prosecutor to introduce evidence of the defendant's felony conviction of assault causing serious bodily injury. *Id.* at 584-586. Reversing the Ninth Circuit Court of Appeals' affirmance of the defendant's conviction, the Supreme Court, *id.* at 588, determined that FRE 403, which is identical to MRE 403,[12] precluded the admission of evidence regarding the name and nature of the defendant's underlying felony in light of the offered stipulation to prevent, as the defendant argued, "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged," i.e., improper propensity evidence that creates a prejudicial effect outweighing ordinary relevance:

> In dealing with the specific problem raised by [18 USC] 922(g)(1) [the federal felon-in-possession statute] and its prior-conviction element, there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant. That risk will vary from case to case, for the reasons already given, but will be substantial whenever the official record offered by the government would be arresting enough to lure a juror into a sequence of bad character reasoning. Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious . . . . [*Old Chief, supra* at 590-591.]

---

[11] See 18 USC 922(g)(1).

[12] MRE 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Concluding that the risk of unfair prejudice substantially outweighed the discounted probative value of the record of conviction, the Supreme Court reversed the conviction and remanded the case. *Id.* at 594-595. Notably, the Court stated in a footnote, "[I]n remanding, we imply no opinion on the possibility of harmless error, an issue not passed on below." *Id.* at 595, n 11.

Defendant argues that he was willing to stipulate that he committed felonious assault rather than permit the court and the prosecution to inform the jury that he was convicted of assault with a dangerous weapon. On the basis of the persuasive authority of *Old Chief*, we find that the trial court abused its discretion by refusing to accept defendant's stipulation.

Despite this abuse of discretion, however, we find that this preserved, nonconstitutional error was harmless in light of the overwhelming evidence presented at trial. *People v Mateo*, 453 Mich 203, 213-215, 220, n 21; 551 NW2d 891 (1996). "The defendant's right to a fair trial by jury requires that preserved error be reviewed in terms of its effect on the factfinder," *id.* at 221. Thus, "reversal is only required if the error was prejudicial. That inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *Id.* at 215.[13]

---

[13] We recognize that there exists a proliferation of cases presenting different standards of review for determining harmless error where preserved, nonconstitutional error is alleged. See *People v Clark*, 453 Mich 572, 589, n 14 (MALLETT, J.), 595 (CAVANAGH, J.); 556 NW2d 820 (1996); *People v Humphreys*, 221 Mich App 443, 448-449; 561 NW2d 868 (1997); *People v Huyser*, 221 Mich App 293, 299; 561 NW2d 481 (1997); *People v Dunham*, 220 Mich App 268, 272; 559 NW2d 360 (1996). We do not need to resolve this apparent conflict in disposing of the case at bar, but mention these cases for the benefit of the bench and bar.

Here, defendant testified at trial that he picked up the gun and threw it out the back door of the house when he realized that the police were outside because he knew that felons were not allowed to have firearms. Even if the jury disbelieved the testimony of Simpson and her mother regarding defendant's holding and cradling the gun in his arms as he threatened to shoot himself and the police, defendant's admission and Deputy West's testimony at trial established that defendant possessed the firearm, i.e., he knew it was in the kitchen, he picked it up, and he threw it outside. Reviewing the record as a whole, we believe that the actual prejudicial effect of the error on the factfinder in the case at hand was minimal, not only in light of defendant's admission but also considering the testimony at trial that "assault with a dangerous weapon" and "felonious assault" were one and the same offense. Indeed, defendant did not agree to stipulate, like the defendant in *Old Chief, supra* at 584, that he merely committed a crime punishable by imprisonment exceeding one year; rather, he only wanted the jury to hear that he was convicted of felonious assault, not assault with a dangerous weapon. We believe that defendant's stipulation, while it may have slightly whitewashed the prior felony offense, still would have placed the jury on notice regarding the type of felony that he committed. Accordingly, we find that the trial court's error was harmless. *Mateo, supra.*

Affirmed.