*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

JACQUILL BURKS ALLEN,

        Defendant-Appellee.

UNPUBLISHED
April 17, 2026
1:53 PM

No. 377074
Wayne Circuit Court
LC No. 24-007259-01-FH

Before: GADOLA, C.J., and MURRAY and M. J. KELLY JJ.

PER CURIAM.

The prosecutor appeals by delayed leave granted the trial court's dismissal of the charges of possession of a firearm by a felon (felon-in-possession), MCL 750.224f(6); and possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b. We reverse and remand.

## I. FACTUAL BACKGROUND

In 2015, defendant pleaded guilty to one count of receiving and concealing a stolen vehicle, MCL 750.535(7); one count of receiving and concealing stolen property with value between $1,001 and $20,000, inclusive, MCL 750.535(2)(b); and one count of third-degree fleeing and eluding, MCL 750.479a(3). Defendant was originally sentenced under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq*. In 2017, defendant pleaded guilty to a probation violation. Consequently, his HYTA status was revoked, and the felony convictions were reinstated. He was sentenced to 270 days in jail.

In 2024, defendant was charged with felon-in-possession; felony-firearm; careless discharge of firearm causing injury or death, MCL 752.861; and reckless use of firearm, MCL 752.863a. The charges stemmed from a shooting incident in Detroit, in which defendant allegedly shot his sister in the hand. Defendant moved to dismiss the felon-in-possession and felony-firearm charges. Defendant asserted that he was entitled to restoration of his right to possess firearms under MCL 750.224f(1). He stated that he successfully completed his sentences for his 2015 convictions, in compliance with MCL 750.224f(1)(b) and (c). However, the statute also requires the defendant to satisfy all fines imposed with the prior conviction as a prerequisite to restoration.

Defendant argued that this requirement renders the statute unconstitutional on its face because it restricts firearm possession based on an individual's financial status. He asserted that financial status has no correlation to a person's propensity for violence and therefore cannot serve as grounds for restricting the right to possess firearms. Defendant also argued that the statute was unconstitutional as applied to him because he was denied the right to possess a firearm based on his ability to pay the fine.

The trial court agreed that MCL 750.224f is unconstitutional on its face because it prohibits defendant from possessing a firearm solely because of unpaid fines. The court cited *New York State Rifle & Pistol Ass'n, Inc v Bruen*, 597 US 1; 142 S Ct 2111; 213 L Ed 2d 387 (2022); *United States v Rahimi*, 602 US 680; 144 S Ct 1889; 219 L Ed 2d 351 (2024); and *People v Swint*, 225 Mich App 353; 572 NW2d 666 (1997). After it received documentation that defendant completed his sentence for the 2015 conviction, the trial court dismissed the felon-in-possession and felony-firearm charges. We granted the prosecutor's application for leave to appeal.

## II. ANALYSIS

The issue of whether a criminal statute is unconstitutional involves a question of law that this Court reviews de novo. *People v Parker*, 319 Mich App 664, 669; 903 NW2d 405 (2017). The trial court's decision on a motion to dismiss criminal charges against a defendant is reviewed for abuse of discretion. *People v Caswell*, 336 Mich App 59, 69; 969 NW2d 538 (2021). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). The trial court abuses its discretion if its decision is based on an error of law. *Id*.

"Both the United States Constitution and the Michigan Constitution grant individuals a right to keep and bear arms for self-defense." *People v Hughes*, ___ Mich App ___, ___; ___ NW3d ___ (2025); slip op at 3 (quotation marks and citation omitted), (Docket No. 367172), lv pdg. The Second Amendment of the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." US Const, Am II. The Michigan Constitution further states, "Every person has a right to keep and bear arms for the defense of himself and the state." Const 1963, art 1, § 6. The Second Amendment's guarantee of the right to bear arms applies to the states through the Fourteenth Amendment. *McDonald v Chicago*, 561 US 742, 786; 130 S Ct 3020; 177 L Ed 2d 894 (2010). The right of felons to bear arms may be abridged. As confirmed by the Supreme Court in *Heller*, "longstanding prohibitions on the possession of firearms by felons…" remain permissible. *District of Columbia v Heller*, 554 US 570, 626-627; 128 S Ct 2783; 171 L Ed 2d 637 (2008).

MCL 750.224f provides, in pertinent part:

> (1) Except as provided in subsection (2), a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after all of the following circumstances exist:

> (a) the person has paid all fines imposed for the violation.

(b) The person has served all terms of imprisonment imposed for the violation.

(c) The person has successfully completed all conditions of probation or parole imposed for the violation.

"A facial challenge alleges that a statute is unconstitutional on its face, meaning that, in general, the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *Hughes*, ___ Mich App at ___; slip op at 8 (quotation marks and citation omitted; alteration in original). "An as-applied challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Id*. at ___; slip op at 8 (quotation marks and citation omitted).

In *Swint*, 225 Mich App at 358, the defendant challenged his conviction of felon-in-possession on the ground that MCL 750.224f violated the state constitution.[1] This Court concluded that MCL 750.224f "represents a reasonable exercise of the state's police power to protect the health, safety, and welfare of its citizens." *Swint*, 225 Mich App at 374. The statute was properly based on the Legislature's "determination that felons, who . . . pose a threat to public safety, and firearms are a lethal combination—at least for three to five years after a felon successfully completes his term of incarceration and probation and pays all requisite fines." *Id*. at 374.

In *Bruen*, 597 US 1, the United States Supreme Court addressed whether a state statute requiring demonstration of a "special need" to carry a firearm in public violated the Second and Fourteenth Amendments' guarantee of the right to possess firearms. The Court specified the standard for determining whether a restriction on the right to possess firearms violates the Second Amendment and Fourteenth Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." [*Id*. at 24.]

The Court had "little difficulty concluding" that the plain text of the Second Amendment protected the plaintiff's intended conduct, i.e., to carry weapons for self-defense. *Id*. at 32. Following a survey of firearm restrictions dating back to medieval Europe, the Court concluded that New York State's requirement of demonstration of a special need as a condition of public carrying of a firearm for self-defense was contrary to the Second Amendment. *Id*. at 70-71. The regulation therefore

---

[1] *Swint* was decided before the United States Supreme Court held in *McDonald*, 561 US at 786, that the Second Amendment was applicable to the states through the Fourteenth Amendment. *Swint*, 225 Mich App at 359-360. See also, *Miller v Texas*, 153 US 535; 14 S Ct 874; 38 L Ed 812 (1894).

"violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 71.

In *Rahimi*, 602 US 680, the United States Supreme Court analyzed whether 18 USC 922 was invalid under the Second Amendment. 18 USC 922(g)(1) is a federal statute comparable to MCL 750.224f. 18 USC 922(g) enumerates nine categories of persons who are prohibited to transport or possess any firearm in connection with interstate or foreign commerce. The first category is for persons who have been "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." Section 922(g)(1). The statute also includes "persons convicted of domestic violence misdemeanors." Section 922(g)(8).

In *Rahimi*, 602 US 680, the defendant's girlfriend petitioned a Texas state court for a restraining order against the defendant following a violent incident in which the defendant fired a gun in the presence of his girlfriend. *Id*. at 686-687. In addition to prohibiting the defendant's contact with his girlfriend and child, the order suspended his gun license for two years. *Id*. The defendant allegedly was involved in multiple shooting incidents during the suspension period. *Id*. at 687-688. The defendant was indicted in federal court "on one count of possessing a firearm while subject to a domestic violence restraining order, in violation of 18 USC 922(g)(8)." *Id*. at 688. The defendant moved for dismissal of the indictment on the ground that the federal statute violated the Second Amendment right to keep and bear arms. *Id*. at 689.

The Supreme Court reiterated its holding from *Bruen*, 597 US 1: "In *Bruen*, we explained that when a firearm regulation is challenged under the Second Amendment, the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'" *Rahimi*, 602 US at 689, quoting *Bruen*, 597 US at 14. The Court summarized its conclusion:

> When a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect. Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms. As applied to the facts of this case, Section 922(g)(8) fits comfortably within this tradition. [*Rahimi*, 602 US at 690.]

Following a historical review of state "going armed laws," the Court concluded that these laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at 698. The Court deemed Section 922(g)(8)(C)(*i*) acceptable because it "does not broadly restrict arms use by the public generally" but instead "applies to individuals found to threaten the physical safety of another." *Rahimi*, 602 US at 698. Additionally, the federal statute restricts firearm possession "only once a court has found that the defendant 'represents a credible threat to the physical safety' of another." *Id*. at 699, quoting § 922(g)(8)(C)(*i*).

It is important to note that in *Rahimi* and *Bruen* the Supreme Court analyzed laws restricting the possession of firearms on citizens either without any criminal record, or with domestic violence misdemeanor convictions. This Court analyzed and concluded in *Hughes* that the government can prohibit *convicted felons* from possessing guns, finding that "consistent with

analogous colonial era laws, states can, in accordance with the Second Amendment, enact laws restricting the possession of firearms by felons." *Hughes*, ___ Mich App at ___; slip op at 12.

In *Hughes*, the defendant argued that any conviction under MCL 750.224f was unconstitutional because a felony conviction did not forfeit an individual's Second Amendment right to keep and bear arms. *Id* ___; slip op at 9. The defendant argued that "the nuanced historical analysis required by *Bruen*" abrogated this Court's decision in *Swint*, 225 Mich App 353. *Hughes*, ___ Mich App at ___; slip op at 10. The Court concluded that MCL 750.224f's restrictions were "consistent with the Nation's historical precedent of regulating firearm possession by persons convicted of felonies, and defendant's facial challenge regarding the constitutionality of the felon-in-possession statute fails." *Hughes*, ___ Mich App at ___; slip op at 14.

The Court also rejected the defendant's argument that the statute was unconstitutional as applied to him because he was a nonviolent offender. *Hughes*, ___ Mich App at ___; slip op at 14-15. The Court stated:

> Contrary to defendant's contention, Michigan's felon-in-possession statute is not unconstitutional as applied to him considering his status as a nonviolent offender. Despite defendant's contentions, there is historical precedent barring nonviolent offenders from exercising their Second Amendment rights. See [*United States v*] *Hunt*, 123 F4th [697], at 706 [(CA 4, 2024)] (stating, "Colonial-era offenders who committed non-violent hunting offenses were ordered to forfeit their firearms[,]" and "English and colonial American governments also enacted other types of categorical bans on the possession of firearms by those who refused to follow less formal legal norms"); [*United States v*] *Jackson*, 110 F4th [1120] at 1129 [(CA 8, 2024)] (concluding "that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons," which included defendant, who was previously convicted of drug offenses). [*Hughes*, ___ Mich App at ___; slip op at 15 (fourth alterations in original).]

The Court concluded that the Legislature properly "acknowledged that persons convicted of certain offenses are more likely to unlawfully use firearms." *Hughes*, ___ Mich App at ___; slip op at 15-16.

To understand how defendant's argument fits within the context of this caselaw, it is necessary to focus on how the MCL 750.224f(1)(a) requirement fits into the statutory scheme. The statute does not prohibit firearm possession for persons who have not paid fines; rather, it withholds restoration of rights until three years after the person has completed three requirements: payment of fines imposed for the violation, completion of the terms of imprisonment, and successful completion of probation or parole imposed for the violation. MCL 224f(1). *Hughes*, ___ Mich App ___, establishes that the state can deprive felons of the right to possess firearms even when the felon's offenses were not violent. *Rahimi* upheld 18 USC 922(g)(1), which imposes a ban on firearm possession by felons and certain misdemeanants without a time limit or path to

restoration of rights.  If the state can permissibly prohibit a nonviolent felon from possessing a firearm forever, it is logically permissible to impose a requirement for restoration of rights, even if the failure to comply with those requirements does not indicate that the individual has a propensity for violence.[2]  The Constitution allows for felons to be denied their right to bear arms and states have the right, *if they so choose*, to develop a path for a felon to regain this right. It is a privilege for a felon to have their right to possess a firearm reinstated after they have "deviated from the legal norms" of society and it is a logical requirement that before a felon is granted this privilege, they need to complete all parts of their sentence. *Hughes*, ___ Mich App at ___; slip op at 15.  Fines that are not excessive are allowed under the Eighth Amendment.  US Const, Am VIII. The legislature requiring a felon to pay fines imposed as part of their conviction, in order to be granted a reinstatement of their right to bear arms, is not a constitutional violation.  It is reasonable for a felon to have to prove that they are rehabilitated, have paid their debt to society, and are worthy of the privilege to have their right to bear arms reinstated.  Accordingly, MCL 750.224f(1)(c) does not facially violate the Second Amendment or violate constitutional rights as applied to defendant.  The trial court therefore erred in dismissing the felon-in-possession charge. The court also erred in dismissing the felony-firearm charge.

Reversed and remanded to the trial court for further proceedings consistent with this position.  We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[2]  It should be noted that MCL 769.34(6) considers fines and costs to be part of the sentence:  "As part of the sentence, the court may also order the defendant to pay any combination of a fine, costs, or applicable assessments.  The court shall order payment of restitution as provided by law."