# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HOWARD LEROY MCMANAMY,

        Defendant-Appellant.

UNPUBLISHED
January 22, 2015

No. 318545
Oakland Circuit Court
LC No. 2013-245729-FH

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM

Defendant is a sex offender. His sex crime "rap sheet" lists four 1987 convictions, two involving persons 13-15 years of age, and two with "multiple variables." These convictions triggered defendant's life-long duty to register pursuant to Michigan's Sex Offenders Registration Act (SORA), MCL 28.722(w)(*iv*); MCL 28.725(12). SORA's registration rules mandate that defendant update his address "immediately" upon vacating his residence or domicile. MCL 28.725(1)(a). A "willful[]" violation of this rule is a felony. MCL 28.729(1).[1]

In 2013, the prosecutor charged defendant with larceny from a building, MCL 750.360, and willfully failing to notify the police of his address change, thereby violating MCL 28.729(1)(a). Defendant offered to stipulate that he was a convicted sex offender subject to SORA's registration requirements. The prosecutor objected, and the trial court refused to accept the stipulation. The court received in evidence a "certified record" of defendant's criminal sexual conduct (CSC) convictions, including a list of the four offenses, their unsavory circumstances, and defendant's 15-year maximum sentence.

The trial court abused its discretion in admitting the annotated list of defendant's convictions. Defendant's offer to stipulate to his status as a convicted sex offender subject to SORA's statutory registration requirements purged the descriptions of his prior convictions of evidentiary probity. What remained was prejudice that tainted his trial. We reverse and remand.

---

[1] Specifically, the statute provides, "[A]n individual required to be registered under this act who willfully violates this act is guilty of a felony."

-1-

## I. BACKGROUND FACTS AND PROCEEDINGS

Defendant was discharged from prison in October 2011. In August 2012, he moved into a trailer owned by Robert Roy. Defendant registered this address with the Sex Offender Registry, as required.

On March 18, 2013, Roy checked himself into an inpatient rehabilitation facility for treatment of his self-acknowledged "serious alcohol problem." According to Eugene Lessor, a resident of Roy's trailer park, defendant then moved in with Lessor. Lessor recalled that defendant brought clothing, utensils, dishes, a mirror, an extension cord, a camera, a cot, a hammer, refrigerator magnets, and night lights to his new abode.

Within a few weeks, Roy returned from his stint in rehabilitation and noticed that several items were missing from his trailer, including his television, a DVD player, a drill, a camping cot, a cordless screwdriver, refrigerator magnets, a spaghetti strainer, and towels. Roy filed a police report. Later that same day, Roy located some of his missing property in Lessor's mobile home. Roy confronted defendant, and defendant left the trailer park. Eventually defendant was arrested and charged with larceny from a building in violation of MCL 750.360 and willfully failing to register his change of address as required under the SORA in violation of MCL 28.729(1)(a).

Defendant determined to defend both the larceny and the SORA charges. He contended that Roy had either given him the items at issue or that they never actually belonged to Roy.[2] As to the registration charge, defendant disputed that he had "willfully" failed to register a new address, claiming that at the time of his arrest he had not officially moved into new lodgings. Defendant alleged that although he had moved some of his belongings to Lessor's mobile home, he continued to sleep, eat some meals, and keep some things in Roy's trailer. These defenses required defendant's testimony. Accordingly, his counsel, Joseph Horenstein, offered to stipulate to his sex offender status to avoid cross-examination regarding the details of those crimes. The following colloquy ensued:

> *Mr. Horenstein*: Yes. I would stipulate . . . that the defendant has a prior sex offense that requires him to register. I won't -- I'm not going to stipulate that he did not register.
>
> *The Court*: Right.
>
> *Mr. Horenstein*: But I would stipulate that there was an offense that would require him to register.
>
> *The Court*: People?
>
> *[The Prosecutor]*: And, your Honor, certainly I'd accept the stipulation. But, as the court's aware, the jury instruction allows the jury to accept or reject

---

[2] Roy was hospitalized with an unspecified malady at the time of trial, so his preliminary examination testimony was read to the jury.

the stipulation. And while that may satisfy the burden of production, I don't think the stipulation satisfies the burden of proof and I still think it would be fair game to ask questions on cross.

*The Court*: I tend to agree with the prosecutor in the event -- I don't think I need to make -- well, do you want to respond --

*Mr. Horenstein*: Yes, Judge.

*The Court*: -- I guess I should make a ruling before he makes this decision.

*Mr. Horenstein*: I would argue that by telling the jury what degree the offense was, could prejudice the defendant. I would stipulate to -- the stipulation would be that he -- he committed a sex offen (ph) -- a sex offense . . . that required him to register, but I don't think it's proper that -- or I'm afraid that if the jury hears what degree, like 3rd -- 2nd Degree or 3rd Degree, that could prejudice them.

*The Court*: People?

[*The Prosecutor*]: Your Honor, . . . I think the degree's necessary. One, by the [SORA] because there are some degrees that don't require registration or at least the same level of registration. Two, the forms from the Michigan State Police, with regards to the registry, that say what the defendant's requirements are as well as his acknowledgment of receiving those responsibilities, list the offense itself. They list how often he has to register. They list the tier that he's on, Tier 3. And I believe that document itself is admissible, as it's a certified document.

So the information, I believe, would be coming into evidence anyway. I think the question is the degree to which it's discussed on the Record and if the defendant's going to testify. I think certainly I'd get to ask him question such as "You were convicted of such and such offense, on such and such a date. You understand that you were required to register" and those types of things.

*The Court*: I think the defendant's basis for objecting is not one of relevancy obviously but one of undue prejudice, under Rule 403. The probative value of the conviction is extremely high. I think undue prejudice is low under these circumstances. He's going to be tried for the offense of Sex Offender's Failure to Register, the prerequisite of which is . . . a [sic] offense by which he must register. I think the People are correct, connection with this probative value and the jury will certainly understand that their decision is to determine whether or not he failed to register, not to find him guilty because he's been previously found guilty of another charge. . . .

Defendant testified and was cross-examined about his sex offender status. He admitted to having "served a lengthy prison sentence" as a result of two convictions for "CSC 3rd degree," and conceded that he had to register for the rest of his life. The prosecutor then introduced into

evidence a multipage document substantiating defendant's status as a sex offender subject to the SORA. The exhibit's second page set forth, among other things, the nature of defendant's convictions. The fifth and sixth pages, titled, "Sex Offender Registration Explanation of Duties To Register As A Sex Offender," consists of 15 statements describing registration requirements. Defendant acknowledged each of these rules upon his 2011 release from prison by initialing them on the form.[3] The jury considered this evidence before finding defendant guilty of larceny from a building and failing to register as a sex offender.

The trial court imposed a departure sentence of 60 months to 15 years' imprisonment, remarking that defendant's multiple prior offenses "keenly and irresistibly grab[] this Court's attention, [and] self-evidently [are] of considerable worth in sentencing the defendant."[4]

On appeal, defendant challenges his departure sentence and the admission of the full judgment record detailing defendant's sex crimes. Because the trial court's evidentiary error requires a new trial, we decline to address defendant's asserted sentencing errors.

## II. ANALYSIS

We review for an abuse of discretion a trial court's decision whether to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269, 666 NW2d 231 (2003). "We review de novo whether a court rule or statute precludes the admission of evidence." *People v Murphy (On Remand)*, 282 Mich App 571, 578; 766 NW2d 303 (2009).

Defendant's proffered stipulation to his status as a sex offender subject to the SORA's registration requirements rendered the second page of the SORA documentation inadmissible under MRE 403.[5] That page presented the number of defendant's CSC convictions (four), and that the circumstances attending two of them involved minors. In the face of the proposed stipulation, this evidence was highly prejudicial, and lacked any probity whatsoever. MRE 403 therefore compelled its exclusion.

We ground our reasoning in an opinion of the United States Supreme Court, *Old Chief v United States*, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997). In *Old Chief*, the Supreme Court held that a federal district court had abused its discretion under FRE 403 by refusing to accept the defendant's stipulation of his prior conviction for a felony offense. MRE 403 is identical to FRE 403. Our Supreme Court has looked to federal case law when interpreting Michigan evidentiary rules. *People v Katt*, 468 Mich 272, 280; 662 NW2d 12 (2003). And this

---

[3] We have attached the second page, and the last two pages as exhibits to this opinion.

[4] Defendant's sentences run concurrently. The minimum sentencing guidelines range was 12 to 48 months.

[5] This evidentiary rule provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Court adopted *Old Chief* "as persuasive authority" in *People v Swint*, 225 Mich App 353, 379; 572 NW2d 666 (1997).

Johnny Lynn Old Chief stood trial under a federal statute prohibiting possession of a firearm by anyone with a prior felony conviction. Old Chief's prior conviction arose from an assault causing serious bodily injury. Rather than risk recitation of the facts underlying that conviction, Old Chief offered to stipulate to his status as a felon during the relevant period. *Old Chief*, 519 US at 174-175. The government refused the stipulation, and the trial court declined to force the government to accept the stipulation. *Id.* at 177. The Court of Appeals for the Ninth Circuit affirmed. *Id.* The Supreme Court reversed, holding that the trial court had abused its discretion by allowing the government to establish the underlying felony by means of unfairly prejudicial evidence, in the face of a stipulation advancing the equivalent evidence.

The Supreme Court rested its opinion on FRE 403, "which authorizes exclusion of relevant evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* at 180. The "unfair prejudice" element of FRE 403, the Court explained, "speaks to the capacity of some relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* The balancing contemplated by the evidentiary rule requires that courts "take account of the full evidentiary context of the case" before determining whether the probative value of proffered evidence outweighs its unfairly prejudicial effect. *Id.* at 182. The task of balancing necessitates that trial courts consider whether other, less prejudicial evidence is available as a substitute for the prejudicial facts: "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Id.* at 182-183.

The Supreme Court took pains to emphasize that a defendant's offer to stipulate to a point of evidence does not automatically transform relevant evidence into irrelevant evidence. Rather, the trial court must always bear in mind the prosecution's "need for evidentiary richness and narrative integrity in presenting a case[.]" *Id* at 183. Nevertheless, the Supreme Court continued, the trial court and the prosecution must accept a stipulation of the felony element in a felony-firearm prosecution. The Court reasoned:

> In dealing with the specific problem raised by [18 USC] 922(g)(1) [the federal felon-in-possession statute] and its prior-conviction element, there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant. That risk will vary from case to case, for the reasons already given, but will be substantial whenever the official record offered by the government would be arresting enough to lure a juror into a sequence of bad character reasoning. Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious. [*Old Chief*, 519 US at 185.]

FRE 403 compels this result, the Supreme Court explained, because the prosecution's need to prove a point with "evidentiary depth to tell a continuous story" loses its strength "when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id*. at 190. The Court elaborated:

> As in this case, the choice of evidence for such an element is usually not between eventful narrative and abstract proposition, but between propositions of slightly varying abstraction, either a record saying that conviction for some crime occurred at a certain time or a statement admitting the same thing without naming the particular offense. The issue of substituting one statement for the other normally arises only when the record of conviction would not be admissible for any purpose beyond proving status, so that excluding it would not deprive the prosecution of evidence with multiple utility; if, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than status (*i.e.,* to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," [FRE] 404(b)), Rule 404(b) guarantees the opportunity to seek its admission. Nor can it be argued that the events behind the prior conviction are proper nourishment for the jurors' sense of obligation to vindicate the public interest. The issue is not whether concrete details of the prior crime should come to the jurors' attention but whether the name or general character of that crime is to be disclosed. . . . The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions. Finally, the most obvious reason that the general presumption that the prosecution may choose its evidence is so remote from application here is that proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense. Proving status without telling exactly why that status was imposed leaves no gap in the story of a defendant's subsequent criminality, and its demonstration by stipulation or admission neither displaces a chapter from a continuous sequence of conventional evidence nor comes across as an officious substitution, to confuse or offend or provoke reproach. [*Id* at 190-191 (citations omitted).]

We find this reasoning highly pertinent here. Defendant's allegedly willful failure to register under the SORA does not turn on the *characteristics* of defendant's prior sex convictions. The number of convictions, and whether they derived from sexual activity with minors or were associated with "multiple variables," lost any possible relevance when defendant offered to stipulate that he was fully subject to the SORA's registration requirements. With that stipulation in evidence, the jury would have no need to read page two of the exhibit to find defendant guilty of willfully failing to register. As with Old Chief's conviction for assault causing serious bodily injury, the details of defendant's prior CSC convictions as presented on page two invited unfair prejudice. The risk of prejudice flows from the likelihood that a jury will

decide that "a bad person deserves punishment." *Old Chief*, 519 US at 181, quoting *United States v Moccia*, 681 F2d 61, 63 (CA 1, 1982) (BREYER, J.).[6]

In rejecting the proposed stipulation, the trial court erred as a matter of law by concluding that the probative value of the conviction information qualified as "extremely high." The parties agree that the jury would be instructed as follows regarding the elements of the failure to register charge:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant was an individual who is required to register as a sex offender. Under the law a person who has been convicted of criminal sexual conduct 3rd degree, is required to register as a sex offender. Second, the defendant was a resident of the State of Michigan. Third, that the defendant willfully violated the Sex Offender Registration Act by failing to register a change of address.

The proposed stipulation would have eliminated the prosecutor's need to prove all elements of the crime except willfulness. Beyond proving defendant's obligation to register, the prosecutor has brought forward no relevant, noncharacter purpose for the evidence contained on page two of the exhibit. Nor would exclusion of this evidence derail the prosecutor's cross-examination, as evidence of defendant's sex crimes and their characteristics does not fall within the realm of admissible impeachment evidence under MRE 609.

Further, the prosecutor's stated reason for rejecting the stipulation—that it would not satisfy the burden of proof—is simply incorrect. The Supreme Court summarized the power and effect of such stipulations as follows:

> To the bench, the bar, and administrative agencies, be it known herefrom that the practice of submission of questions to any adjudicating forum, judicial or quasi-judicial on stipulation of fact, is praiseworthy in proper cases. It eliminates costly and time consuming hearings. It narrows and delineates issues. But once stipulations have been received and approved they are sacrosanct. Neither a hearing officer nor a judge may thereafter alter them. This holding requires no supporting citation. The necessity of the rule is apparent. A party must be able to rest secure on the premise that the stipulated facts and stipulated ultimate conclusionary facts as accepted will be those upon which adjudication is based. Any deviation therefrom results in a denial of due process for the obvious reason that both parties by accepting the stipulation have been foreclosed from making any testimonial or other evidentiary record. [*Dana Corp v Employment Security Comm*, 371 Mich 107, 110; 123 NW2d 277 (1963).]

---

[6] The Indiana Court of Appeals has also applied *Old Chief* in prosecutions under a sex registration statute. See *McClain v State*, 898 NE2d 409 (Ind App, 2008). The Supreme Court of Tennessee applied *Old Chief* in a prosecution for prison escape, *State v James*, 81 SW3d 751, 762 (Tenn, 2002), the Texas Court of Criminal Appeals adopted its reasoning in a driving while intoxicated prosecution, *Tamez v State*, 11 SW3d 198 (Tx 2000), and the Arkansas Supreme Court found *Old Chief*'s logic persuasive in *Diemer v State*, 365 Ark 61; 225 SW3d 348 (2006).

Stipulations substitute for proof. Properly instructed, a jury would have no choice but to accept the stipulation.

The prosecutor has also urged that the six-page registry information "would be coming into evidence anyway." This argument, too, misapprehends governing evidentiary principles. Portions of the exhibit that qualified as more prejudicial than probative could and should have been excluded from admission. Other portions, such as the initialed pages demonstrating defendant's awareness of his reporting obligations, were properly admitted as they contained highly relevant, unobjectionable material. In *Old Chief*, the Supreme Court specifically recognized that a trial court could properly accept a redacted record of defendant's convictions as a substitute for a stipulation. *Old Chief*, 519 US at 191 n 10. Rather than adopting that approach, however, the trial court improperly permitted the prosecutor to introduce descriptive evidence of defendant's underlying sex crimes bearing no probative value and giving rise to a substantial likelihood of unfair prejudice.

As to the larceny case, the error clearly was not harmless. We evaluate the erroneous admission of defendant's conviction details under the standard applicable to preserved, nonconstitutional error. Defendant must demonstrate that the error he seeks to vindicate has resulted in a miscarriage of justice. MCL 769.26; *Lukity*, 460 Mich at 495. The central question is "whether absent the error, it is 'more probable than not' that a different outcome would have resulted." *People v Gursky*, 486 Mich 596, 619; 786 NW2d 579 (2010) (citation omitted).

Both the larceny and the registration cases were credibility contests. Defendant's declaration of innocence would be vindicated only if the jury believed his claim that the goods did not belong to the complainant, and that he had not willfully failed to register. In the larceny case, the complaining witness suffered from a "serious alcohol problem" and did not appear at the trial. Defendant's testimony regarding the ownership of the disputed items stood alone. By showing defendant to be a child-molesting "bad person [who] deserves punishment," the prosecution unfairly boosted the likelihood of conviction. The trial court's failure to give a limiting instruction compounded the prejudice.

The failure to register case presents a closer question. Defendant's probation officer testified that defendant informed her that he had moved, and that she twice instructed him to update his registry address. Defendant insisted that he had "paid up" his rent for his space in Roy's trailer through April 8, 2013, and never "officially" moved into Lessor's trailer.[7] Because the only contested issue as to the registration charge was whether defendant *willfully* failed to register, admission of the unnecessary details of his sex crimes made it highly unlikely that a jury would believe his version of events. As the trial court noted when imposing a departure sentence, defendant's past crimes "keenly and irresistibly" grab one's attention. We have no reason to believe that the jury did not experience a similar reaction. The sordid details of those

---

[7] Roy returned from rehab on April 2, 2013.

crimes added no utility to the prosecutor's case; rather, they unfairly prejudiced defendant's ability to persuade the jury that he did not deliberately violate the law.

We reverse and remand for a new trial. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher