*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES EDWARD JONES,

Defendant-Appellant.

UNPUBLISHED
March 12, 2020

No. 345742
Bay Circuit Court
LC No. 18-010043-FH

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendant, James Edward Jones, appeals his jury-trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion used to accomplish sexual penetration). The trial court sentenced Jones as a fourth-offense habitual offender, MCL 769.12(1)(a), to serve a prison term of 300 to 450 months. We affirm.

## I. BACKGROUND

On April 2, 2016, the victim visited her neighbor's apartment for a small gathering, where she met Jones for the first time. After the victim left the neighbor's apartment and as she approached the door to her own apartment, she realized that Jones was behind her. The victim testified that Jones stated that "[h]e wanted to see what [her] apartment looked like." The victim allowed Jones to enter her apartment, but testified that she was afraid of him at that point. When the prosecutor asked what happened after Jones closed the door, the victim responded, "Relax. Relax. Relax. It won't hurt. Relax. It won't hurt. Relax. It won't hurt. Relax. It won't hurt." She testified that Jones took her clothes off, even though she had told him not to. The victim also told Jones to leave, but he did not and, instead, told her to relax and to get on her bed. The victim got on the bed. She testified that she believed Jones was going to hurt her.

The victim testified, "I told him—I told him—I told him no. I told him no. I tried to get him off of me with . . . my knees. I told him no, and he—he told me—he told me just relax. Just relax. Just relax." The victim further testified that Jones had inserted his penis inside her vagina and that Jones ignored her when she told him "to take it out." Jones held the victim down by her shoulders as he penetrated her. The victim testified that she was in pain. Once the sexual assault

-1-

ended, Jones left the victim's apartment. Law enforcement was contacted, and a sexual assault examination was performed. DNA testing of a vulvar swab that was obtained during the examination revealed "very strong support" that Jones was a contributor to the mixture of DNA found on the swab.

Jones was charged with CSC-III. The felony information included a fourth-offense habitual offender charge, notifying Jones that he faced a mandatory minimum sentence of 25 years' imprisonment if convicted of CSC-III. The mandatory minimum sentence was also discussed on the record on June 25, 2018, while the parties and the trial court discussed a plea offer. In exchange for Jones pleading guilty or *nolo contendere* to CSC-III as a second-habitual offender, the prosecutor offered to dismiss the fourth-offense habitual offender charge and an unrelated pending charge. It was noted on the record that, if Jones accepted the plea offer, he would avoid the 25-year mandatory minimum sentence, and his maximum sentence would be 270 months' imprisonment. Jones rejected the offer on the record. On the morning of trial, the trial court again informed Jones of the 25-year mandatory minimum and asked Jones to confirm that he had rejected the plea offer. Jones responded that he "still" rejected the offer. Trial commenced, and Jones was convicted as charged. Jones was sentenced to 300 to 450 months' imprisonment. This appeal followed.

II. ANALYSIS

A. 25-YEAR SENTENCE

Jones argues that the mandatory 25-year prison term under MCL 769.12(1)(a) is unconstitutionally cruel or unusual as applied to him. We disagree.

We review issues of constitutional law de novo. *People v Swint*, 225 Mich App 353, 364; 572 NW2d 666 (1997). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Dipiazza*, 286 Mich App 137, 144; 778 NW2d 264 (2009) (citation omitted).

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments." US Const, Am VIII. The Michigan Constitution prohibits the infliction of "cruel or unusual punishment." Const 1963, art 1, § 16. "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotations omitted).

To determine whether a punishment is cruel or unusual, this Court employs a three-part test: (1) it examines "the severity of the sentence imposed and the gravity of the offense," (2) it compares "the penalty to penalties for other crimes under Michigan law," and (3) it compares "Michigan's penalty and penalties imposed for the same offense in other states." *Id*. However, the "dominant test" is the proportionality question, which is "whether the punishment is so excessive that it is completely unsuitable to the crime." *People v Coles*, 417 Mich 523, 530; 339 NW2d 440 (1983), overruled on other grounds by *People v Milbourn*, 435 Mich 630, 644; 461 NW2d 1 (1990). "[A] proportionate sentence is not cruel or unusual," *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013), and "[l]egislatively mandated sentences are presumptively

proportional and presumptively valid," *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Bowling*, 299 Mich App at 558 (citation omitted).

In this case, Jones's 25-year minimum sentence was legislatively mandated.[1] To support that this presumptively proportionate sentence is disproportionate, Jones argues that the 25-year minimum sentence is the functional equivalent of life imprisonment without the possibility of parole. Jones's argument is without factual merit, however. Jones, who is currently 59 years old, will be eligible for parole when he is 82 years old. However, Jones notes that he is expected to live until the age of approximately 90.2 years. Although Jones has not provided an empirical basis for his assertion, even by his own calculations the 25-year mandatory minimum does not exceed his life expectancy. Furthermore, this Court has concluded that while a minimum sentence of 25 years is substantial, it is not comparable to sentences of death and life without parole. See *People v Payne*, 304 Mich App 667, 675; 850 NW2d 601 (2014). Rather, a 25-year sentence "allow[s] for review of an individual defendant's progress toward rehabilitation and provides a meaningful opportunity for release on parole." *Id*. Therefore, Jones has not presented any unusual circumstances that would render the punishment outlined in MCL 769.12(1)(a) disproportionate.

Furthermore, Jones has failed to show that the severity of the sentence imposed was disproportionate to the gravity of the offense. The evidence at trial showed that Jones removed the victim's clothing against her wishes, refused to leave her apartment when asked to do so, held her down by the shoulders, and engaged in penile-vaginal penetration with her despite her objections. At the time Jones committed the offense in this case, he had seven prior felonies and ten prior misdemeanors, which supports a pattern of disregard for the law. Jones has also failed to demonstrate that his sentence is cruel or unusual in comparison to the penalties imposed for other crimes in this state or for the same crimes in other states. Although Jones does argue that the "three strikes" law in California and other states has been unsuccessful, this is a policy argument for the Legislature to address—not a legal issue for this Court. See *King v R G Indus, Inc*, 182 Mich App 343, 345; 451 NW2d 874 (1990). Furthermore, in a plurality decision, the United States Supreme Court upheld the constitutionality of California's "three strikes law" against a cruel and unusual punishment challenge. *Ewing v California*, 538 US 11, 30-31; 123 S Ct 1179; 155 L Ed 2d 108 (2003).

Thus, Jones has failed to demonstrate that application of MCL 769.12(1)(a) in this case constituted cruel or unusual punishment as applied to him. Because Jones's punishment "passes

---

[1] A 25-year mandatory sentence under MCL 769.12(1)(a) will be imposed if a defendant's "subsequent felony is a serious crime . . . and 1 or more of the prior felony convictions are listed prior felonies . . . ." MCL 769.12(1)(a). Jones was convicted of CSC-III, which is a serious crime as defined by MCL 769.12(6)(c). Jones had at least three listed prior felony convictions as defined by MCL 769.12(6)(a), including carrying a concealed weapon, MCL 750.227; attempted armed robbery, MCL 750.529; and escape from jail, MCL 750.197c. Therefore, Jones was subject to a mandatory 25-year minimum sentence.

muster under the state constitution, then it necessarily passes muster under the federal constitution." See *Benton*, 294 Mich App at 204 (quotation omitted).

## B. STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Jones raises additional arguments on appeal. We conclude that none of these arguments have merit.

## 1. PROSECUTORIAL ERROR

Jones argues that the prosecutor committed error by referring to the victim as "mentally slow" without providing evidence "to prove the [victim's] mental disability." Jones also argues that the prosecutor improperly "implie[d] that [the victim] should be allowed more chances to give truthful testimony than are usually allowed before a witness is deemed as not credible." We disagree that the prosecutor's comments amounted to prosecutorial error.

"[T]o preserve an issue of prosecutorial [error], a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because that did not occur here, we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted). A defendant "bears the burden of persuasion with respect to prejudice." *Id*. at 763 (citation omitted). "We will not find error requiring reversal if a curative instruction could have alleviated the effect of the prosecutor's misconduct." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

"A prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *Id*. "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "Issues of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002).

During voir dire, the prosecutor stated, "You're going to figure out fairly quickly, in her testimony, that [the victim] is mentally slow." The prosecutor made a similar comment in his opening statement when he stated, "You're going to realize early on in her testimony that [the victim] is a little mentally slower than the rest of us, but she can communicate if you give her enough time." During closing argument the prosecutor stated, "As I told you in my opening

statement, as I'm sure you noticed, pretty quickly in her testimony, [the victim] is mentally slow. You all agreed in voir dire that you would not hold that against her when judging her credibility."

After reviewing the entire record and evaluating the prosecutor's statements in context, we conclude that they were not improper. During the victim's testimony, it was clear that she had some degree of disability, as she often repeated the word "relax" or the phrase "it won't hurt" in her answers when describing the sexual assault. Additionally, at times, the victim would spontaneously repeat "relax," "I'm sorry," or "[m]y fault." Other times during the victim's testimony, it was difficult to understand her answer and it took her more time than one would expect to provide an intelligible response. In light of the victim's manner of testifying, it appears that the prosecutor's references to the victim being "mentally slow" provided a greater context for her unusual manner of testifying. The prosecutor's reminder during closing argument that the jury promised during voir dire not to hold the victim's disability against her was made in the context of asking the jury not to discount the victim's testimony because of her disability. Consequently, because we conclude that the prosecutor's remarks were not improper, Jones has failed to establish plain error. Moreover, with respect to the prejudice prong, the jurors were able to observe the victim during her testimony and form their own opinions about the victim's credibility. The jury was instructed that the prosecutor's arguments were not evidence, that they were the only judges of the facts, that they must decide which witnesses they believed, and that they must not let sympathy or prejudice influence their decision. Jurors are presumed to follow their instructions. See *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Thus, Jones has failed to establish plain error affecting his substantial rights.

## 2. PERJURED TESTIMONY

Jones argues that he was convicted on the basis of the victim's false or perjured testimony. Because this issue was not raised below, we review for plain error affecting substantial rights. See *Carines*, 460 Mich at 763.

Jones appears to suggest that the differences between the victim's testimony at the preliminary examination and her testimony at trial demonstrates that the victim's testimony was false or perjured, and that the trial court, prosecutor, and defense counsel allowed this testimony without correction. Although it is well settled that a conviction obtained through perjured testimony must be set aside, *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009), a defendant must first prove that the testimony was actually false. In this case, Jones has not presented any factual basis showing that the victim's testimony was actually false. Rather, Jones only points to inconsistencies in the victim's testimony. This is unavailing, however, because this Court has held that the existence of an inconsistent prior statement does not automatically establish that the testimony was false. *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016). Furthermore, the alleged inconsistencies in the victim's testimony were presented to the jury through the questioning of defense counsel on cross-examination. Defense counsel also highlighted the victim's inconsistent statements during closing argument to support that the victim was not credible. Therefore, because Jones has failed to establish that the testimony presented was actually false, and because the jury was aware of the inconsistencies in the victim's testimony, Jones has failed to establish plain error affecting his substantial rights.

## 3. INEFFECTIVE ASSISTANCE

Jones argues that his Fifth,[2] Sixth, and Fourteenth Amendment rights were violated because of defense counsel's ineffective assistance at trial. We disagree.

Jones failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial or a *Ginther*[3] hearing. Therefore, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

Jones first argues that defense counsel was ineffective by failing to object to the prosecutor's references to the victim being "mentally slow." As already discussed, however, the prosecutor's comments were not improper. Therefore, Jones's claim of ineffective assistance of counsel in relation to defense counsel's failure to object to the prosecutor's statements must fail. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (holding that trial counsel is not ineffective for failing to make a futile objection).

Next, Jones argues that defense counsel was ineffective by failing to address "inconsistent and contradictory testimony with evidence." "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Moreover, "[a] defendant must establish a factual basis for an ineffective assistance of counsel claim." *People v Hoang*, 328 Mich App 45, 64; 935 NW2d 396 (2019). Our review of the record reveals that Jones's argument lacks a factual predicate. Defense counsel addressed several inconsistencies in trial testimony and impeached the victim with her testimony at Jones's preliminary examination. Therefore, Jones has failed to demonstrate any errors made by defense counsel that are apparent on the record, and he has failed to establish that defense counsel was ineffective.

Finally, Jones argues that defense counsel was ineffective for failing to object to the prosecutor's leading questions during direct examination of the victim. In so arguing, however, Jones fails to cite relevant authority and fails to explain or rationalize how the prosecutor's questions amounted to improper leading questions. A defendant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either

---

[2] Although Jones references his Fifth Amendment right to counsel, Jones's arguments on appeal only relate to the Sixth and Fourteenth Amendment rights to effective assistance of counsel. Consequently, we will not address whether Jones's Fifth Amendment right to counsel was violated.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation omitted). Therefore, by failing to adequately brief the issue, Jones has abandoned this claim that defense counsel was ineffective. See *People v Henry*, 315 Mich App 130, 149; 889 NW2d 1 (2016). However, to the extent that we have reviewed the argument, we conclude that it lacks merit.

## 4. SUFFICIENCY OF THE EVIDENCE

Next, Jones argues that he was convicted on the basis of insufficient evidence. However, because Jones has presented no argument concerning this issue in the body of the brief, this claim is abandoned. See *id*. Nevertheless, we have reviewed the argument and conclude that the evidence presented was sufficient to allow the jury to conclude that all of the elements of CSC-III had been established. See *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012) (outlining the elements of CSC-III based on force or coercion).

## 5. PROBABLE CAUSE TO ISSUE ARREST WARRANT

Jones argues that his arrest warrant was issued without probable cause. However, Jones has failed to provide any factual support or meaningful legal analysis in support of this argument. Jones has also failed to provide this Court with the arrest warrant affidavit. By failing to adequately brief the issue, Jones has abandoned this claim. See *Henry*, 315 Mich App at 149. Furthermore, even if this Court was to overlook Jones's abandonment of this issue, Jones would not be entitled to relief because "once the court obtains jurisdiction over the defendant, proof of an invalid arrest warrant does not divest the court of jurisdiction. Regardless of the means used to bring him within the court's jurisdiction, both Federal and Michigan cases uphold the power of a court to try a defendant." *People v Collins*, 52 Mich App 332, 336; 217 NW2d 119 (1974).

Affirmed.

/s/ Thomas C. Cameron
/s/ Anica Letica