*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 25, 2024

Plaintiff-Appellee,

v

No. 360014
Shiawassee Circuit Court
LC No. 2021-005888-FH

GREGORY ALLEN EBRIGHT III,

Defendant-Appellant.

Before: GARRETT, P.J., and LETICA and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree home invasion, MCL 750.110a(2); two counts of larceny in a building, MCL 750.360; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve 10 to 20 years' imprisonment for the first-degree home invasion conviction, 34 months to 15 years' imprisonment for the larceny in a building convictions, and 46 to 140 months' imprisonment for the felon-in-possession conviction. Defendant was also sentenced to serve a two-year prison term for the felony-firearm conviction, to be served consecutive to his sentence for felon-in-possession. We affirm.

## I. BACKGROUND

This case arises out of a home invasion perpetrated against Joseph Chalker by Chalker's ex-girlfriend, DeaAnn Pollard, and her new boyfriend, defendant. While defendant and Pollard both participated in the home invasion, only defendant was tried because Pollard agreed to testify against defendant in exchange for dismissal of all of her charges. Pollard, who had children in common with Chalker, previously lived with Chalker at the subject house but left when the couple broke up. Chalker kept the couple's dog, and Pollard had been informed by Animal Control that there was a possibility of an abuse case being opened regarding the dog.

Pollard enlisted defendant to help her get the dog back. Pollard, who was intoxicated by a combination of alcohol and Xanax, was driven by defendant to the house in a black pickup truck at a time when Pollard knew Chalker would not be home; two neighbors saw defendant and Pollard

arrive in the truck. Pollard and defendant left with much more than just the dog: according to Chalker, when he got home he was missing two televisions, an Xbox, a Mossman shotgun, an antique rifle, DeWalt power tools, photos of the children, a utility trailer, a lawn tractor, and three compound bows. Pollard testified that she only wanted to take the dog and the photographs of the children, but defendant unilaterally began stealing other property. Chalker immediately suspected Pollard, but when he confronted her about it he discovered that none of his missing property was at her home. Pollard testified that, prior to going home, she brought the dog to her cousin's house and brought Chalker's property to a storage unit.

After the confrontation with Chalker, defendant and Pollard spent the night with Pollard's cousin out of fear that the police would be looking for them at Pollard's house. The following day, in an additional attempt to hide from the police, defendant and Pollard drove to a campground. When the police could not find Pollard, Chalker suspected that she might have been with her cousin, and he relayed this information to the police. When the police went to the cousin's house they found Chalker's dog, and the cousin told them that some of the stolen property was likely to be at Pollard's storage unit and that Pollard could likely be found at the campground.

The police found defendant and Pollard at a campground where they had been staying in a mobile camper. Police searched the camper, and found the Mossman shotgun behind the kitchen cabinetry. They also found a DeWalt circular saw in a storage compartment, a DeWalt drill driver and impact driver in a toolbox, a number of DeWalt power tools on the floor, and a 50-inch television on a top bunkbed. The utility trailer, the lawn tractor, and the antique rifle were among the items that were never recovered. A jury found defendant guilty as described above, and this appeal followed.

## II. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel's performance was deficient in four distinct ways and that a *Ginther*[1] hearing is warranted to determine whether these deficiencies resulted in the deprivation of his right to the effective assistance of counsel. We disagree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*. Because the trial court has not conducted an evidentiary hearing, this Court should limit its review to mistakes that are apparent from the record. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003).

The Sixth Amendment of the United States Constitution guarantees that criminal defendants receive effective assistance of counsel. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed2d 674 (1984). Michigan's Constitution affords this right the same level of protection as the United States Constitution. *People v Pickens*, 446 Mich 298, 318-320; 521 NW2d 797 (1994). Accordingly, "[t]o prevail on a claim of ineffective assistance, a defendant

---

[1] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 US at 690. This Court then evaluates "whether the trial attorney's acts or omissions were outside the wide range of professionally competent assistance." *People v Green*, 322 Mich App 676, 684; 913 NW2d 385 (2018) (quotation marks and citation omitted).

## 1. CHOICE OF STRATEGY

Defendant argues that defense counsel was ineffective by seemingly arguing to the jury that defendant was misidentified as the person the two neighbors saw at the house because the identity evidence was overwhelming and the proper strategy would have been to focus on defendant's lack of criminal intent.

In general, "[t]his Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Finally, counsel's decisions regarding the choice of theories to present are presumed to be sound exercises of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

The parties agree that the evidence at trial was such that no one could reasonably dispute that defendant was present for and participated in the home invasion; the dispute arises from whether he did so with the impression that Pollard had the right to be in the house and was taking property that belonged to her. Despite this, counsel made the following comments during closing arguments seemingly insinuating that defendant was misidentified:

> Let's talk about first, [Chalker's neighbors]. And let's talk about 'em together because it's important. It's important because they don't have a dog in the fight. Their [sic] mindin' their own business workin' across the road, and they see—what their testimony was is two individuals come to the home. Now they're contacted by Trooper Murphy, and upon initial contact, neither one of them is able to identify [defendant]. It's only after Trooper Murphy pulls up [defendant's] photograph on his computer terminal in his car that he's able—that they say, "Yeah, that's the guy." But why? Let's back up a minute. They testified neither of them saw [defendant] enter that house. Neither of them saw [defendant] enter that building. What they did testify, they saw a truck and a trailer pull out and head north.

They didn't see [defendant] in possession of firearms. They didn't see [defendant] in possession of power tools. And for that matter, neither did they see Ms. Pollard in possession of those items either.

Defense counsel then made comments about the quality of the investigation:

But in the rush to move forward the investigation I submit to you, what else was missed? We heard about supposedly—what was supposedly recovered, but we don't know how it got there and when asked specifically if [defendant] had any knowledge of that shotgun that was placed in not an obvious spot in that camper, [Trooper Murphy] said, "no," he did not possess—he did not in his report have any way knowing [sic] if [defendant] had any knowledge that gun was there.

Defendant argues that defense counsel was seemingly attempting to establish that defendant and Pollard were not actually at the home, that defendant and Pollard did not take anything from the home, and that defendant did not know Pollard had taken the gun. According to defendant, because the evidence of defendant's presence at the home and participation in the home invasion was overwhelming, the only sound strategy was to attack Pollard's credibility so as to undermine the intent element. Indeed, defense counsel even conceded as much during opening statements.

When defense counsel's argument is viewed as a whole, it is clear that the principal strategy was to paint Pollard as a liar who sold out defendant to protect herself from prosecution. Defense counsel engaged in a deep examination of Pollard's credibility, emphasizing the deal she received to testify, the contradictions in her testimony, her intoxication at the time of the crime, the fact that there was "zero corroboration for [her] version of events," and that there was "simply no way to make sense of the timeline" she presented. The brief comments regarding the lack of details observed by the two neighbors can be viewed as an attempt to undermine the credibility of the prosecution's evidence more generally by pointing out that its two disinterested eyewitnesses had very little substance to actually offer. Finally, the points defense counsel made in reference to the fact that defendant was not seen carrying a gun out of the house and that Trooper Murphy could not establish that defendant knew the gun was in the camper were important for the defense to the felon-in-possession and felony-firearm charges. Even if defendant established that he reasonably believed Pollard had the right to enter the home and remove the property, that would not mean that defendant had the right to possess a firearm. Therefore, it was important to establish that defendant was never in possession of this gun.

2. PROFFER AGREEMENT

One of the terms of Pollard's agreement with the prosecution was that she take a polygraph examination prior to testifying, but she never did so. Defendant argues that defense counsel did not adequately explore and emphasize Pollard's failure to take the polygraph examination.

The cross-examination of witnesses is a matter of trial strategy. *Petri*, 279 Mich App at 413. However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). In this case, Pollard's agreement with the prosecution mandated that she take a polygraph examination, but it is undisputed that she failed to do so. Defense counsel asked Pollard about this during cross examination:

*Q.* Now I'm referring to this proffer agreement you read this document?

*A.* I did.

*Q.* According to section six of the document, you were to be given a poly—polygraph examination; did that occur?

*A.* No, it did not.

Defense counsel then made a brief reference to the polygraph during closing arguments:

> Ms. Pollard, when things came down on her cut and—cut and run. Her testimony—you have the agreement exactly what she was supposed to do, what she was required to do. It's [sic] been shown to you. And we can talk about whether or not it was too good of a deal. That's not for me, that's not in debate here. But that agreement wasn't completely followed.

In hindsight, defense counsel could have placed more emphasis on Pollard's failure to take the polygraph considering this was the only safeguard in place to make sure her testimony was likely to be truthful. However, we do not second-guess strategic decisions through the lens of hindsight. *Traver*, 328 Mich App at 422-423. Notably, there is no evidence in the record concerning why Pollard did not take a polygraph examination or whether defense counsel was aware of the reason why she did not take it. It is possible defense counsel feared that there was an innocuous explanation for her failure to submit to the examination and decided defendant was best served by simply establishing that it did not happen. Defense counsel made a strategic choice to emphasize other avenues of attacking Pollard's credibility, such as the incentive to lie created by her deal with the prosecution, her intoxication at the time of the offense, and the implausible nature of the timeline she laid out. We discern no reason not to defer to defense counsel's strategic choices. See *Id*.[2]

### 3. PRIOR FELONY CONVICTION

Defendant argues that, pursuant to *Old Chief v United States*, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997) and *People v Swint*, 225 Mich App 353, 378; 572 NW2d 666 (1997), defense counsel was ineffective by failing to stipulate that defendant had a prior felony conviction for purposes of the felon-in-possession charge.

Defendant was charged with felon-in-possession based on a specified felony of third-degree fleeing and eluding. On the first day of trial, defense counsel expressed satisfaction with the court's proposed preliminary instructions, which included, with respect to the elements of felon-in-possession, that "defendant had previously been convicted of third-degree fleeing and

---

[2] Defendant also makes a passing comment suggesting that Pollard initially lied to the police and was not questioned about this, but this argument was not developed. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Providing an issue with only "cursory treatment constitutes abandonment of the issue." *Id*. Therefore, we deem this argument abandoned and decline to review it.

eluding." The prosecutor later expressed concern that introduction of the certification of defendant's conviction could be prejudicial to defendant because it included other convictions for which defendant was sentenced on the same day, as well as a fourth-offense habitual offender enhancement. Defense counsel stated that he advised defendant and that defendant made the decision to stipulate to the probation officer offering testimony as to defendant's third-degree fleeing and eluding conviction. After defense counsel conducted voir dire with defendant about his decision, the court questioned defendant about his decision:

> THE COURT: So the People, they—one a [sic] the elements that they have to prove is that you have a—that you're previously convicted of a felony, yeah; you know that?
>
> THE WITNESS: Yes, your Honor.
>
> THE COURT: And so the question is how they go about doing that. And they're a little concerned about a certified abstract of conviction because it has other felonies you were convicted of plus a hab four; right?
>
> THE WITNESS: Yes.
>
> THE COURT: And then, I'm sure that you understand—your attorney has probably told you that if that document were to go in front of the jury, it would be prejudicial. Do you—do you believe that?
>
> THE WITNESS: Yes.
>
> THE COURT: Yeah. And so what the People are suggesting is that [the probation agent], who's here in the courtroom today, will testify that you were previously convicted of a felony there—then that way, the jury would not hear that there were other felonies and that you were a hab four. So that's where we're at? Do you understand that?
>
> THE WITNESS: Yes, your Honor.
>
> THE COURT: And then, is that your opinion that is probably the best way for you to go is to allow [the probation agent] to testify that you're previously convicted of a felony, rather than having that abstract of conviction admitted in a document so that the jury could not only see that but your other convictions plus a hab four?
>
> THE WITNESS: Yes.
>
> THE COURT: Do you have any questions about that?
>
> THE WITNESS: No, your Honor.
>
> THE COURT: All right. Thank you. And that's what we'll do.

On appeal, the prosecution argues that defendant waived this argument by openly consenting to this process during the trial.[3] "This Court has defined 'waiver' as the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012) (quotation marks and citation omitted). The problem with the prosecution's argument is that the issue was framed to defendant as a choice between admitting a certified abstract of conviction that included additional convictions or admitting testimony of a probation officer. Nothing in the record suggests that defendant knowingly and intelligently waived his right to stipulate to the fact that he did have a prior conviction without admitting any evidence regarding the details of the conviction.

Defendant cites *Swint*, 225 Mich App 353, and this Court's interpretation therein of *Old Chief*, for the proposition that defense counsel's failure to stipulate to a prior conviction amounts to ineffective assistance of counsel. In *Swint*, 225 Mich App at 377-379, this Court noted that it is permissible for a defendant to stipulate to the existence of a prior felony conviction without disclosing the nature of the prior conviction. This Court referred to the Supreme Court's determination that FRE 403, which is identical with MRE 403, precludes the admission of evidence regarding the name and nature of the defendant's underlying felony in light of an offered stipulation to prevent improper propensity evidence that may create a prejudicial effect. *Id*. at 378. This Court further noted that when a defendant offers to concede the fact of the prior conviction, admission of evidence beyond such a stipulation may constitute prejudicial error. *Id*. at 377.

In *Old Chief*, 519 US at 175, the defendant requested that the trial court enter an order requiring the prosecution to refrain from mentioning the name and nature of his underlying felony, except to state that the defendant had been convicted of a crime punishable by imprisonment exceeding one year. The trial court rejected the defendant's offer to stipulate and permitted the prosecutor to introduce evidence of the defendant's felony conviction. *Id*. at 177. The Supreme Court explained:

> In dealing with the specific problem raised by [18 USC] 922(g)(1) [the federal felon-in-possession statute] and its prior-conviction element, there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant. That risk will vary from case to case, for the reasons already given, but will be substantial whenever the official record offered by the government would be arresting enough to lure a juror into a sequence of bad character reasoning. [When] a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious . . . . [*Id*. at 185.]

---

[3] This Court reviews "for clear error the trial court's factual findings surrounding a defendant's waiver. However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, [this Court's] review is de novo." *People v Russell*, 471 Mich 182, 187; 684 NW2d 754 (2004).

In this case, defendant is alleging error based not on a refusal by the trial court to allow him to stipulate to his prior felony but based on defense counsel's failure to seek such a stipulation. *Old Chief* and *Swint* are distinguishable because, in those cases, the issue was the trial court's refusal to accept a stipulation to the defendant's prior conviction, not defense counsel's failure to request a stipulation. It is not apparent from *Old Chief* or *Swint* that a failure to request a stipulation is tantamount to deficient performance on the part of defense counsel.

Defendant has not overcome the presumption that defense counsel exercised sound trial strategy because there were numerous valid reasons supporting this approach. See *Davis*, 250 Mich App at 368. Had counsel merely stipulated to defendant having a prior specified felony without naming the specified felony, the jury would have been left to speculate about the nature of the prior felony. Providing the name and date of the prior felony prevented the jury from speculating whether the prior felony involved home invasion or gun charges and allowed the jury to know that the current home invasion and gun charges were not the continuation of a prior pattern of criminal activity. Further, the prior conviction was from 2014, which allowed the jury to know that several years had elapsed since defendant's prior criminal history. Finally, by disclosing to the jury that defendant's right to possess a firearm had not been restored under MCL 28.424(4)(b)(*i*) simply because he had not paid all fines imposed for the violation resulting in the prohibition, defense counsel prevented the jury from believing that his rights had not been restored for a more prejudicial reason.

## 4. RESTITUTION

Defendant argues that he was denied the effective assistance of counsel when defense counsel failed to object to the inclusion of future child care costs of $200 and lost wages of $3,000 in the restitution amount ordered by the trial court. Defendant has provided no facts to support his claim that the restitution amount was erroneous and that counsel was therefore ineffective by failing to object, and he fails to cite relevant authority or explain or rationalize the basis of his argument in a meaningful manner. Rather, he merely asserts that there "could be no strategic reason to fail to object to the erroneous amount of restitution" and that he was prejudiced by counsel's "failure to object to the erroneous amount because there is at least a reasonable probability that had defense counsel objected, thereby bringing the error to the court's attention, that the result would have been different with a lower amount of restitution." We deem this argument abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

## B. OV 16

Defendant argues that the trial court erred by assessing 10 points for OV 16 because the evidence did not support a finding that the lost property had significant sentimental value to Chalker.

Regarding the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error is established when the appellate court is left with a firm and definite conviction that an error occurred. *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012). This Court reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines. *People v Haynes*, 338 Mich App 392, 435; 980 NW2d 66 (2021).

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

OV 16 provides that 10 points may be assessed when the property obtained, damaged, lost, or destroyed "had a value of more than $20,000.00 or had significant historical, social, or sentimental value[.]" MCL 777.46(1)(d). Five points may be assessed if the property had a value of $1,000 or more but not more than $20,000. MCL 777.46(1)(e). One point may be assessed when the property had a value of $200 or more but not more than $1,000. MCL 777.46(1)(f).

The trial court assessed 10 points for OV 16 on the basis of the loss of the antique rifle. Chalker stated in his victim's impact statement that the rifle was "an antique gun, a family heirloom" that "has been in the family for four generations." Chalker also stated in the impact statement that the loss of this antique gun has been painful for both him and his father. Therefore, the trial court's finding that the rifle was a family heirloom was supported by the evidence in the PSIR. *McChester*, 310 Mich App at 358. While the trial court did not expressly find that the rifle had "significant historical, social, or sentimental value," one cannot meaningfully dispute that an antique family heirloom that had been passed down for four generations had significant sentimental value. Therefore, there was no clear error. Defendant argues that "the sentimental value was not 'significant' " because the gun was purportedly worth only $2,000. However, this argument conflates money and sentiment. It is inarguable that virtually everybody owns property that is worthless to the market but priceless to the person, and the Legislature recognized as much by allowing the assessment of 10 points for property with significant sentimental value irrespective of its monetary value. [4]

## III. CONCLUSION

In conclusion, each of the arguments defendant raised on appeal are without merit. Defendant has not established any errors by his trial counsel, and OV 16 was properly scored.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Anica Letica
/s/ Allie Greenleaf Maldonado

---

[4] Regardless, defendant would not be entitled to resentencing if the guidelines were reduced by five points. See MCL 777.46(1)(e); see also *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). We further note that defendant does not separately challenge the scoring of OV 16 for his larceny in a building and felon-in-possession convictions. See MCL 777.22(1) ("Score offense variable 16 under this section for a violation or attempted violation of section 110a of the Michigan Penal Code, 1931 PA 328, MCL 750.110a.")